**Lawrence P. SIMMS, Plaintiff,**

v.

**EXETER ARCHITECTURAL PRODUCTS, INC., Charles D. Flack, Jr., and Harold E. Flack, II, Defendants.**

No. 3:CV 93–0792.

United States District Court, M.D. Pennsylvania.

Feb. 10, 1994.

Thomas I. Vanaskie, Elliott, Bray & Riley, G.F. Blake, Elliott, Vanaskie & Riley, Matthew A. Cartwright, Munley, Mattise, Kelly & Cartwright, Scranton, PA, for Lawrence P. Simms.

Joseph D. Mancano, Britt, Hankins, Schaible & Moughan, Philadelphia, PA, for Charles D. Flack, Jr., Harold E. Flack, II.

Joseph T. Wright, Jr., McDonnell, O'Brien & Wright, Scranton, PA, Thomas F. Ford, Rosenn Jenkins & Greenwald, Wilkes–Barre, PA, for Exeter Architectural Products, Inc.

Joseph D. Mancano, Britt, Hankins, Schaible & Moughan, Richard S. Margulies, Britt, Hankins, Schaible & Moughan, Philadelphia, PA, for Charles D. Flack, Jr., Harold E. Flack, II.

Matthew A. Cartwright, Munley, Mattise, Kelly & Cartwright, Scranton, PA, for Lawrence P. Simms.

John R. Lenahan, Jr., Lenahan & Dempsey, Scranton, PA, for mediator.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Plaintiff Lawrence P. Simms initiated this diversity based action on May 26, 1993, against Defendants Exeter Architectural Products, Inc., Charles D. Flack, Jr. and Harold E. Flack, II. The Plaintiff seeks both equitable and legal relief from Defendants' illegal and oppressive corporate conduct. (Doc. No. 1, p. 14). Although there are current motions pending, the matters before us today are limited and will be addressed as follows: (1) Plaintiff's Motion for the Appointment of a Receiver pendente lite; (2) Plaintiff's Motion for mandatory injunction relating to the inspection of corporate books and records; and (3) Plaintiff's Motion to Disqualify Rosenn, Jenkins & Greenwald as counsel for Defendant Exeter Architectural Products, Inc.[1]

## BACKGROUND

Defendant Exeter Architectural Products, Inc. (hereinafter Exeter) manufactures and distributes a patented window barrier, of which perforated steel is a major component. Plaintiff Simms is a founding shareholder and a director of Exeter and served as Exeter's President from the time of its creation until he was terminated in October, 1992. Defendant Charles D. Flack, Jr. is a founding shareholder of Exeter along with his brother Harold E. Flack, II. The two served as Exeter's Chairman of the Board and Vice President respectively. Both were also founding Shareholders of Exeter. (Doc. No. 3, p. 1).

In 1989, Simms, Charles Flack and Harold Flack, as the founders of Exeter, had each initially purchased and controlled an equal amount of shares of common stock. In December, 1990, the three founders, Simms, C. Flack and H. Flack, each loaned Exeter the sum of $80,000. On July 30, 1991, the Board of Directors, also comprised of Simms, C. Flack and H. Flack, approved an amendment to the Articles of Incorporation of Exeter which increased the authorized shares of common stock to 2,000,000 shares. The three shareholders simultaneously converted their $80,000 loans to investments in Exeter for which each was issued an additional 399,990 shares. The relevance is that each continued to own equally one-third of the outstanding stock of this closely held corporation. (Doc. No. 4, p. 2).

In September 1991, Simms, Charles Flack and Harold Flack entered into a Shareholders Agreement. (Doc. No. 4, Exh. "A"). According to this agreement, if any of the founding shareholders were terminated in 1992, with or without cause, the remaining founding shareholders and/or the Exeter corporation were entitled to purchase the terminated shareholder's shares at a fixed price of $1.10 per share. In October 1991, Exeter made available preferred stock with a par value of $100 per share. Purchasers of this preferred stock were entitled to receive cash dividends. Once a holder of preferred stock, shareholder had the option to convert his stock into common stock at a conversion rate of 17.15 shares common stock for each share of preferred stock. (Doc. No. 4, p. 3).

In March 1992, the parties agreed to a thirty percent (30%) salary reduction for three months for Simms, Charles Flack and Harold Flack. The Plaintiff Simms has alleged that at the end of this salary reduction period, the Flacks began to implement a plan to eliminate his rights and economic interests as a one-third owner of Exeter. Plaintiff

---

1. On September 9, 1993, this Court conducted a hearing with regard to the above mentioned outstanding motions. At the hearing, we entertained oral argument and received testimony. Thus, the parties were afforded an opportunity to support the arguments that they previously submitted to the Court.

contends that in July 1992, the Flacks indefinitely extended the 30% salary reduction over his protest. The Plaintiff further alleges that in September 1992, without proper notice of any corporate meeting and in violation of the Exeter By–Laws, the Flacks converted Exeter's debt of $330,000 to Diamond Manufacturing, which the Flacks owned, from non-interest bearing to interest bearing at a rate of 2 points above the prime rate.

The Plaintiff avers that the defendants conspired to misrepresent to him the date of a Board of Directors meeting to assure that he was not in attendance and that once absent from that meeting the Flacks falsely represented that Simms demanded control of Exeter due to differences in management philosophies. The minutes of the meeting have allegedly preserved these assertions. It was at this September Board of Directors meeting that Charles Flack and Harold Flack acted to approve the replacement of Simms as President. The Plaintiff contends that upon his termination, despite the provisions in the Shareholders Agreement, Charles and Harold Flack conspired and combined to offer to purchase Simms' shares at only $.20 per share, well below the $1.10 per share figure set forth in the Shareholders Agreement. We will discuss the motions seriatim.

I. *Motion for Appointment of Receiver Pendente Lite or Custodian*

Plaintiff Simms filed a motion for the appointment of receiver pendente lite on July 8, 1993 requesting the involuntary winding up and dissolution of Exeter and the appointment of a receiver pursuant to Section 1984 of the Pennsylvania Business Corporation Law or, alternatively, the appointment of a custodian under Section 1767. (Doc. No. 4, p. 1) The Plaintiff contends that Defendants conspired and combined to financially benefit themselves and their wholly-owned Diamond Corporation to the detriment of Exeter and himself. Plaintiff contends that the cumulative effect of a series of oppressive corporate actions warrants the appointment of a receiver pendente lite or a custodian.

Specifically, Plaintiff Simms points to Defendants Exeter, Charles Flack and Harold Flack's concerted effort to "squeeze out" Plaintiff Simms. First, Plaintiff avers that he was wrongfully terminated as President. Simms maintains that Charles and Harold Flack, in their capacity as officers and directors of Exeter, acted without authorization and without disclosure to financially benefit their alter ego corporation at the expense of Exeter. In addition, Plaintiff presents allegations as to the Flacks' refusal to share corporate information with him despite the fact that even after termination he remained a director-shareholder.

The Defendants filed a brief in opposition stating first that the motion for a receiver should be denied because the Plaintiff failed to comply with Local Rule 401.3, now rule 7.3. The Defendants rest that argument on the fact that no supporting documents, affidavits or transcripts of depositions, were filed within the ten days after the motion was filed.[2] The second responsive argument that the Defendants set forth is that the appointment of a receiver pendente lite is inappropriate where the complaint fails to state a claim for involuntary dissolution and the Plaintiffs have failed to state such a claim.

At the outset, we must point out that under the Pennsylvania Business Corporation Law, there is a distinct difference between a determination as to the appointment of a receiver pendente lite under § 1984 and a decision to appoint a custodian of a corporation under § 1767. The former is concerned with the preservation of corporate assets and the preservation of day to day business until a full hearing can be had, while the latter (although ultimately invoked for the same protection as that found in a receiver) requires a court to make a preliminary determination as to the illegal, oppressive, or fraudulent nature of the actions of the directors or those in control of the corporation toward the remaining significant but minori-

---

**2.** The Plaintiff did, however, file a supporting brief on July 8, 1993, the same day the motion was filed.

ty shareholders.[3] In addition, we must determine whether involuntary dissolution is reasonably necessary to protect the rights or interests of any substantial number of shareholders not limited to those complaining and whether the winding up of this business entity by liquidation is the only feasible means to protect the complaining shareholder's expectation of a fair return on his investment in the closely held corporation.

### A. Receiver Pendente Lite

▬ The decision whether to appoint a receiver is within the discretion of the Court. *Stainton v. Tarantino,* 637 F.Supp. 1051, 1072 (E.D.Pa.1986) (quoting *Northampton National Bank of Easton v. Piscanio,* 475 Pa. 57, 63, 379 A.2d 870 (1977)). Because of the drastic effect the appointment of a receiver has on a business entity, a court should exercise its power to appoint a receiver "sparingly, with caution and circumspection, and only in an extreme case under extraordinary circumstances, or under such circumstances as demand or require summary relief." Id. 637 F.Supp. at 1072 quoting *Hankin v. Hankin,* 507 Pa. 603, 608, 493 A.2d 675 (1985).

▬ Plaintiff Simms moves this Court to appoint a receiver to safeguard the assets of the corporation, and to prevent the Defendants from dissipating those assets. (Doc. No. 5—Plaintiff's Brief In Support of Motion for Appointment of Receiver). The standard for exercising this type of an equitable remedy resembles that for a preliminary injunction.

> The appointment of a receiver is a matter within the sound discretion of the court, and each case must be determined upon its own conditions and circumstances, and in exercising this right the courts should ever keep in mind that a receiver is, like an injunction, an extraordinary remedy, and ought never be made except in cases of necessity, and upon a clear and satisfactory showing that the emergency exists, in order to protect the interests of the plain-

tiff in the property involved. The power of appointing receivers is one which the courts have said should be sparingly exercised and with great caution. (Emphasis added).

*Rumbaugh v. Beck,* 491 F.Supp. 511, 520 (E.D.Pa.), aff'd mem., 636 F.2d 1210 (3rd Cir.1980) (citing *Miller v. Fisco, Inc.,* 376 F.Supp. 468, 470 (E.D.Pa.1974). See also *Goodman v. DeAzoulay,* 539 F.Supp. 10 (E.D.Pa.1981).

No such emergency exists in the case before us, and indeed, the Plaintiff has not made any emergency allegations that would require us to delve into that vein of analysis. In reviewing pertinent Pennsylvania case law, we note the predominant theme of appointing a receiver only in cases where there is obvious waste, dissipation, fraud or mismanagement, none of which are presently apparent or even alleged. See *Hankin v. Hankin,* 507 Pa. 603, 493 A.2d 675 (1975).

Exeter Architectural is a viable corporate operation. As an ongoing business entity it is free from impending foreclosure, it is not within the wake of bankruptcy, nor is it burdened with significant corporate debt. From the record before us we can discern no immediate external or internal financial threat to Exeter. We cannot find any indication that either creditors or the Messrs. Flack wish to end this successful operation.

▬ As Defendants properly note, in addition to the Plaintiff's failure to set forth emergency circumstances, Plaintiff has not shown that he will soon suffer substantial harm. It is incumbent upon one seeking appointment of a receiver, to a solvent corporation, to provide evidence signifying that "irreparable damage will in all probability result unless a receiver is appointed." *Tate v. Philadelphia Transportation Co.,* 410 Pa. 490, 500, 190 A.2d 316 (1963). Plaintiff Simms has not made this requisite showing. His argument in support of his motion for appointment of a receiver is directed towards the Defendants' alleged corporate wrongdo-

---

**3.** Under Pennsylvania Business Corporation Law, the inquiry would be tailored to whether there was oppressive action, by those in control, toward "one or more holders or owners of 5% or more of the outstanding shares of any class of the corporation ..." 15 Pa.C.S.A. § 1767.

ing and Plaintiff's financial deprivation rather than an eminent threat to Exeter and its assets. It is well settled, however, that monetary loss alone does not constitute the kind of injury essential to the granting of a receivership. *Rumbaugh v. Beck,* 491 F.Supp. 511, 517 (E.D.Pa.1980), aff'd, 636 F.2d 1210 (3rd Cir.1980). In the absence of both emergency circumstances and a showing of irreparable damage, Plaintiff's Motion for the Appointment of a Receiver is denied.

### B. Custodian of Corporation

█ The Plaintiff's allegations of wrongful termination, of Defendants' failure to disclose corporate information and Defendants' intentional disregarding of the Shareholder Buy-Sell Agreement certainly raise the issue of oppression, but we cannot, at this juncture, make such a determination without further development of the record. It may even go unresolved until we hear testimony. We call attention to the permissive "may" language in § 1767 and note our statutory discretion to decide whether to appoint a custodian. We will deny Plaintiff's request for a custodian without foreclosing the oppressive issue. Defendants however, be forewarned, this Court's action of denying Plaintiff's request for a custodian or receiver pendente lite does not mean that a shifting of corporate structure, or dissipation of assets will go unnoticed. Any attempt, at this point, to restructure, merge or liquidate may result in a decision inapposite to the one we have reached today.

Again, it is difficult to overcome the plain fact that Exeter is financially sound. There has been no attempt to wrest the assets from Exeter, and no attempt to obligate Exeter to excessive debt while dumping stock ownership. Under these circumstances we find the appointment of a custodian to be inappropriate.

### C. Dissolution

█ Intertwined with Plaintiff's argument in support of his request for a receiver pendente lite or in the alternative, a custodian, is his assertion that Exeter Architectural Inc. should be involuntarily dissolved. The Pennsylvania Business Corporation Law provides for dissolution in those circumstances where it can be demonstrated: (a) the acts taken by the persons in charge are illegal, oppressive, or fraudulent and the interests of the shareholders would be benefitted by a winding up or dissolution, or (b) the corporate assets are being misapplied or wasted. 15 Pa.C.S.A. § 1981. By invoking the Section § 1981, Plaintiff Simms has manifested his belief that dissolution may be the only appropriate remedy. However, he has offered us nothing in support of this belief. We can discern from the record before us no argument that dissolution or winding up will benefit the shareholders in any way, shape or form. Nor can we ourselves, fathom the argument that a sole complaining shareholder would make to overcome the undeniable fact that the entity he seeks to dissolve is not only in tact but is considerably profitable.

With regard to the use of the corporate assets under Section 1981, we can find no misapplication of corporate funds (i.e. the use of corporate monies for personal interests or illegal purposes). In considering whether there has been a wasting of the assets, we would note that there has to be something more than a decision adverse to petitioner, or a business decision that proves to be risky or ultimately unsuccessful. For there to be waste there must be a blatant squandering of assets to the detriment of the business entity, as if the sole purpose was to harm the entity and render what little might be left to the remaining shareholders worthless. Again, this is not the case. We find Plaintiff's request for relief in the form of corporate dissolution and receivership to be inappropriate and deleterious.

### II. *Motion for Mandatory Injunction Relating to Inspection of Corporate Books*

█ Plaintiff Simms filed this motion requesting access to corporate documents and claims an unqualified right to inspect the corporate books in his capacity as a Director of Exeter Architectural Inc. Plaintiff avers that he sought "to examine and inspect the books and records of the corporation for the purposes of determining the value of [his] shares in this closely and privately held corporation and of generally evaluating the

management of the corporation." (Doc. No. 6). See also Plaintiff's verified demand for inspection of books. (Doc. No. 6, Exh. "A").

The Defendants argue that neither Exeter nor it officials refused to permit Simms access to any corporate documents. Rather, the information was not immediately forthcoming simply because Exeter "sought to ensure that the inspection was for a proper purpose and that Simms would maintain the confidential proprietary, and secret nature of the corporate documents." (Doc. No. 14, p. 4).

Section 1508(b) of the Pennsylvania Business Corporation Law, in pertinent part, provides as follows:

> **Right of Inspection.**—Every shareholder shall, upon written verified demand stating the purpose thereof, have a right to examine, in person or by agents or attorney, during the usual hours for business for any proper purpose, the share register, books and records of account, and records of the proceedings of the incorporators, shareholders and directors and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to the interests of the person as a shareholder.

15 Pa.C.S.A. § 1508(b).

The right of a stockholder in a corporation to inspect corporate records has long been established in Pennsylvania common law. *Zerbey v. J.H. Zerbey Newspapers,* 385 Pa.Super. 109, 560 A.2d 191 (1989); *Klein v. Scranton Life Ins. Co.,* 139 Pa.Super. 369, 11 A.2d 770 (1940). As Plaintiff properly states, the statute is a codification of the Pennsylvania common law rule that for a stockholder to obtain corporate information he need only state a legitimate purpose in a verified demand.

We note that in furtherance of this necessary right, the Pennsylvania Legislature saw fit to prohibit the opting out of Section 1508 by adding subsection (d) to the Act. Subsection (d) provides that no Articles of Incorporation may ever relax Section 1508. Therefore, even if all relevant parties to the inception of the corporation agree that shareholders will have no right to inspect corporate records, shareholders will continue to enjoy such right.

Although Defendants aver that Plaintiff's intercourse with industry competitors is sufficient to restrict access to corporate information, we can find no case law that would suggest that mere "contacts" with a competing company or a potential competitor would validate a denial of a shareholder's request for perusal of corporate books. In fact, there is case law to the contrary, indicating that there should not be a deprivation of the right to inspect corporate records simply because there is, what Defendants perceive to be, a potentially threatening relationship. *Zerbey v. J.H. Zerbey Newspapers,* 385 Pa.Super. 109, 560 A.2d 191 (1989); *Kuhbach v. Irving Cut Glass Co.,* 220 Pa. 427, 69 A. 981 (1908) (Pennsylvania Supreme Court found that a non-compensable relationship with a competitor does not necessarily show an improper purpose in making demand for inspection); *Hodder v. George Hogg Company,* 223 Pa. 196, 72 A. 553 (1908) (Supreme Court affirmed the order which had compelled the corporation to arrange for an inspection of its books despite the corporation's allegations that the stockholder was not acting in good faith, and that he was interested in a rival concern).

In any event, aside from Defendants expressed doubt as to the intent and propriety of Plaintiff's actions, there has been no evidence offered to indicate any wrong doing or breach of a duty on Plaintiff's part. With that, our shareholder's right analysis ends. We are inclined to grant Plaintiff's Motion to Compel Production of Books and Records, thereby allowing the inspection of all Exeter's corporate records.

Whether it be said that Defendants severed Plaintiff Simms from his position at Exeter or that Plaintiff has been relieved of his official duties as President, he nevertheless was removed. This, however, in no way effects his status as a director of Exeter. This status carries with it specific duties. Among them is the duty to manage the general affairs of the corporation. General, meaning that which is not within the day to day operations of the corporation, but rather geared toward long term management.

Lewis D. Solomon, *Corporations Law and Policy*, p. 271 (2nd ed. 1988). In furtherance of this management responsibility, a director is "entitled to all the information available to enable him to perform his duties to the stockholders who are the real owners ..." *Strassburger v. Philadelphia Record Co.*, 335 Pa. 485, 6 A.2d 922 (1939).

Plaintiff Simms is not only a shareholder, but he is also a director with a duty to shareholders, and the interest common to both positions as well as to all shareholders is the stability of the corporation and its valuation. Therefore, any attack on his stated interest in the corporate documents, stating that the request is purely selfish in nature and solely for his own financial gain to the detriment of Exeter, is negated by Plaintiff's capacity of director. Simms' interest in the documents need not be scrutinized for a director enjoys an unqualified right to inspect the books of a corporation. *Machen v. Machen and Mayer Electrical Mfg. Co.*, 237 Pa. 212, 85 A. 100 (1912); *Strassburger v. Philadelphia Record Co.*, 335 Pa. 485, 6 A.2d 922 (1939).

In the absence of any articulated allegations as to Plaintiff's fiduciary duty and some evidence that would tend to support such allegations, and in consideration of the relevant case law, we will override the Defendants' belligerent withholding of information and grant Plaintiff's Motion to Compel Production of Corporate Books and Records.

III. *Motion to Disqualify Rosenn, Jenkins & Greenwald as Counsel for Defendant Exeter Architectural Inc.*

■ Despite the absence of an express agreement for individual representation of Plaintiff Simms by Rosenn, Jenkins & Greenwald, Plaintiff believes that Attorney Rosenthal represented his personal interests in connection with the Shareholders Agreement. He asserts that the inquiry is whether he reasonably believed that Attorney Rosenthal was acting as his lawyer. His belief is based upon the fact that not only did he consult with Rosenthal and share confidences with him on issues of concern solely to him as an individual (which are now in issue) but that he also relied on such advice because of the absence of any admonitions by Rosenthal. (Plaintiff's affidavit ¶¶ 12–22).

Plaintiff contends, inter alia, that Rule 1.7 of the Rules of Professional Conduct are applicable to the case before us and that there need be "full disclosure and consultation" by the attorney seeking to represent a subsequent client if the possibility exists that his responsibilities to another client may be materially limited or compromised.[4] Plaintiff further contends that the letter of September 24, 1991, sent by Attorney Rosenthal was a poor attempt to clarify his role and falls short of the mandates of Rule 1.7.[5]

The Defendant, however, maintains that this conflict of interest issue can only be addressed if the Court finds that there was a relationship between Simms and Rosenthal. It is the position of the Defendant that there was no such attorney-client relationship and therefore all relevant analysis under Rule 1.7 is negated, leaving us with a law firm that would not be disqualified from representing its corporate client merely because of a dispute with a shareholder or former officer.

After a review of the facts before us we have found the following to be indisputable: (1) The firm of Rosenn, Jenkins & Greenwald was retained by Defendant Exeter sometime in mid–1991; (2) on or about October 15, 1991, Attorney Bruce Rosenthal, a partner at Rosenn, Jenkins & Greenwald, purchased

4. **Rule 1.7 Conflict of Interest: General Rule** provided in pertinent part—
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after full disclosure and consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

5. Although there is no requirement of oral disclosure or consultation under Rule 1.7, in the case before us, we believe that "full consultation" requires more than a letter suggesting that the shareholder should have his own counsel review the proposed Shareholder Agreement.

certain shares of Exeter preferred stock which he continues to own; (3) several partners and/or their spouses purchased shares of Exeter's preferred stock and continue to own them; (4) Attorney Rosenthal drafted the Shareholders Agreement now directly at issue in this litigation; (5) Attorney Rosenthal was the attorney who denied Plaintiff access to the corporate records; and (6) because of his integral role as corporate counsel, Attorney Rosenthal can be called as a witness by Plaintiff Simms as he is significantly connected to almost all substantial matters at issue.

We find the aforementioned, when taken together, somewhat disturbing. Had there been no ownership of stock by Attorney Rosenthal or members of his firm, our focal point would be simply whether there was an attorney-client relationship. However, in this situation, where Attorney Rosenthal is both advocate and owner of Exeter, it appears to be extremely difficult if not impossible for the attorney to give advice as a non-interested party. Although both parties present arguments on whether and to what extent Attorney Rosenthal will benefit should Plaintiff's economic interest be eliminated all together, and whether there was a relationship sufficient to establish a privilege, we are careful not to cloud the ultimate consideration.

The ultimate issue before us is not whether there was, in fact, an attorney-client relationship between Simms and Rosenthal that could now serve as a basis to estop Attorney Rosenthal from subsequent corporate representation, but rather, under the circumstances, whether the average person would believe that (1) he was being represented by Rosenthal and (2) he could obtain detached, neutral advice from an interested attorney. In short, we are concerned about the public's perception. To this end, a court "must consider what it believes would be the view of the average layman—someone not familiar with the professional standards." *Price v. Admiral Insurance Co.*, 481 F.Supp. 374 (E.D.Pa.1979). Although there is room to interpret and even manipulate the language of the Rules of Professional Responsibility, it seems highly unlikely that a common man,

when exposed to a brief synopsis of this case, would have difficulty determining that there was an inference of impropriety. We are very much concerned about the appearance of impropriety. This concern is necessary if we are to safeguard the integrity of our legal system. And indeed, integrity is the life blood of our system.

■ The rules of professional conduct are intended to "[p]romote public confidence in the integrity of the bar by guarding against impropriety or even the appearance of such impropriety." *Caracciolo v. Ballard,* 687 F.Supp. 159 (E.D.Pa.1988). "[T]he Court has a responsibility to maintain public confidence in the legal profession and accordingly, may disqualify an attorney not only for actual improper conduct, but also for failing to avoid even the appearance of impropriety." *Price v. Admiral Insurance Co.*, 481 F.Supp. 374 (E.D.Pa.1979).

Although Defendant claims that the collective ownership of stock between and among Rosenthal, members of the firm and their immediate family is de minimus, it is still fatal to their position. Given the nature of the business entity before us, a closely held corporation, we will overlook Plaintiff's failure to cite case law for the proposition that stock ownership voids a corporation's right to freely choose counsel. It would be difficult to apply such a rule to a public corporation there being far too many stockholder-owners. However, in the case before us, we are dealing with a limited number of investors in an intricate relationship with their investing partners who are also their legal counsel.

■ Although we are cognizant of Defendants' argument that Plaintiff is directly interfering with Defendants' right to a freely chosen, competent attorney, we note that "the right of a party to choose their own counsel is not absolute." *United States v. Miller,* 624 F.2d 1198 (3rd Cir.1980); *United States ex rel. Carey v. Rundle,* 409 F.2d 1210 (3rd Cir.1969), *cert. denied* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970) (there is no absolute right to a particular counsel). The Courts must balance the public's right to freely chosen counsel against its duty to maintain the highest ethical standards. *Diaz Estrada v. Lopez Cabrera,* 632 F.Supp. 1174

(D.P.R.1985). We believe that the existing relationship between Rosenthal and Exeter alone conjures up a negative image that is sufficient to disqualify Attorney Rosenthal. When taken together with the fact that Attorney Rosenthal drafted the agreement now in dispute and attempted to enforce that agreement not only as corporate counsel but as a preferred stock owner, we find it necessary to disqualify Attorney Rosenthal.

Accordingly, we cannot agree that an appearance of an improper conflict of interest inherent in one partner's dual role as corporate litigation counsel and as preferred stock shareholder vanishes when his partner is substituted as corporate counsel.[6] To argue as Defendants do[7] is "to argue against reality, against the vagaries of human nature, and against widely-held public impressions of the legal profession." *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3rd Cir.1976). Therefore, because we hold that an appearance of impropriety results when a shareholder also serves as corporate counsel and as litigation counsel, substituting a partner as counsel will not suffice as an antidote. We therefore will disqualify the law firm of Rosenn, Jenkins and Greenwald from representing Exeter Architectural Products, Inc.

### CONCLUSION

On the record before us, we find that Simms has not adduced sufficient evidence for the appointment of a receiver pendente lite. We also conclude that Plaintiff has a right to review the corporate books and records requested. And finally, we hold that there is an inherent conflict of interest and an appearance of impropriety sufficient to merit a disqualification of both Attorney Rosenthal and the firm of Rosenn, Jenkins and Greenwald. An appropriate Order is attached.

### ORDER

AND NOW, THIS 10th DAY OF FEBRUARY, 1994, IT IS HEREBY ORDERED THAT:

1. The Plaintiff's Motion for Appointment of a Receiver Pendente Lite, or in the alternative for the appointment of a custodian is DENIED.

2. The Plaintiff's Motion for Mandatory Injunction relating to the inspection of corporate books and records is GRANTED. Defendants are directed to make said books and records available for inspection within 15 days of this Order.

3. Plaintiff's Motion to Disqualify Rosenn, Jenkins and Greenwald as counsel for Defendant Exeter is GRANTED.

4. This Order disposes of documents 4, 6, and 16.

5. An appeal from this decision will be deemed frivolous, taken in bad faith and without probable cause.

---

6. It should be noted that the other members of the firm that own preferred stock in Exeter Architectural are partners in the firm. They are as follows: Harold Rosenn, Sylvia Greenwald, Eugene Roth, and Murray Ufberg.

7. Defendants argue that should the court disqualify Attorney Rosenthal from serving as trial counsel, under the Model Rules, there does not necessarily have to be a disqualification of his firm.