**Chappel v. Applied Control Systems Inc.**

C.P. of Allegheny County, no. GD98-9309.

*Michael J. Bruzzese,* for plaintiff.
*William L. Stang,* for defendants.

WETTICK, *J.,* December 22, 1998—Plaintiff's motion for judgment on the pleadings is the subject of this opinion and order of court. The issue raised through the motion is whether a director has an absolute right to inspect corporate records and review other information involving the affairs of the corporation that is ordinarily available to directors of a corporation.

Plaintiff's complaint for declaratory judgment alleges that plaintiff's husband, Robert Chappel, owns one-third of the outstanding shares of stock in Applied Control Systems Inc. (ACS). Defendants Richard Velan and Richard Starr also each own one-third of the outstanding shares. Until January 1997, Mr. Chappel was employed by ACS and served on its board of directors. Plaintiff alleges that in January 1997, her husband's employment was terminated by Mr. Velan and Mr. Starr. Shortly after his employment was terminated, Mr. Chappel resigned from the board.

At the April 23, 1998 annual meeting of the shareholders, Mr. Chappel had sufficient votes—under a system of cumulative voting—to elect a director of his choice to the three-member board of directors. Mr. Chap-

pel elected his wife—the plaintiff in this case. Mr. Velan and Mr. Starr elected themselves as the two other directors on the board.

Ms. Chappel alleges that defendants have refused to give her access to corporate books, records, and accounts, and have threatened to have her physically removed if she goes to the corporate office without invitation. In their answer and new matter, defendants admit that at the April 23, 1998 annual meeting of the shareholders, Ms. Chappel was elected to serve as a director. Defendants deny that they made a blanket refusal to furnish any corporate records to plaintiff. However, they admit that they have been unwilling to furnish proprietary and confidential corporate information that Ms. Chappel seeks.

They justify their refusal on the basis of allegations that plaintiff and her husband are presently shareholders, directors, officers, and/or employees in one or more business entities (including Advanced Technologies Inc.) that compete with ACS; and that plaintiff and her husband seek to obtain confidential information from ACS to aid their competing business operations to the detriment of ACS. Such information includes dealings with customers, payroll records, methods of operation, costs, profit margins, and other financial information. Defendants further allege that the information is being sought for the purpose of disrupting the business of ACS in order to force defendants to resolve other legal proceedings between the parties in an advantageous manner to plaintiff's husband.

Plaintiff's reply to defendants' new matter denies these allegations.

The parties' pleadings incorporate the pleadings of three other lawsuits that were pending at the time this declaratory judgment action was instituted. In proceed-

ings at GD97-733, ACS sued Robert Chappel and Advanced Technologies. The complaint alleged that ACS is in the business of securing and providing comprehensive engineering services for the measurement and control of industrial processes and related support services. At all relevant times, Mr. Chappel was a shareholder, director, officer, and full-time employee of ACS. In December 1994, he formed Advanced Technologies, which provides services that are substantially similar to those that ACS provides. Mr. Chappel diverted business of ACS to Advanced Technologies by using Advanced Technologies to bid on projects or procure assignments that were appropriate for ACS. Mr. Chappel concealed from ACS his involvement with Advanced Technologies. ACS seeks recovery of compensatory damages, punitive damages, and counsel fees under the following causes of action: breach of fiduciary duty, usurpation of corporate opportunity, fraud and misrepresentation, and interference with prospective contractual relations.

In his answer, Mr. Chappel denies that he controls Advanced Technologies or that Advanced Technologies operates a business that is substantially similar to that of ACS. The answer includes a counterclaim in which Mr. Chappel alleges that Mr. Velan and Mr. Starr have systematically frozen him out of the management of ACS; operated the corporation to benefit only themselves; mismanaged the financial affairs of the corporation; and diverted corporate opportunities to side businesses that they own. This counterclaim raises a wrongful termination count based on allegations that Mr. Chappel was fired because he refused to participate in fraudulent activity; a breach of contract count based on ACS's failure to repay a loan; and an action to

enforce a shareholder's agreement in which Mr. Chappel requests that ACS be ordered to purchase his stock at a fair market price.

In proceedings at GD97-4796, Mr. Chappel sued Mr. Velan, Mr. Starr, and companies which they allegedly control. This complaint is based on allegations under the following headings: background facts relating to a history of oppression, freeze-out, and exclusion of Chappel as a minority shareholder (paragraphs 19-68), background facts relating to financing of ACS (paragraphs 69-77), background facts relating to Velan's and Starr's wholesale waste and misappropriation of ACS assets (paragraphs 78-95), background relating to Velan's and Starr's side-businesses, usurpation of corporate opportunities, tortious interference with ACS customers, and other fraudulent conduct (paragraphs 96-116), and background facts relating to the wrongful termination of Chappel's employment by Velan and Starr (paragraphs 117-26). The following counts of plaintiff's complaint survived preliminary objections: Count I—breach of fiduciary duty owed to Chappel; Count III—oppression of minority shareholder; Count V—fraud and misrepresentation; and Count X—civil conspiracy.

In proceedings at GD97-4798, Mr. Chappel filed a complaint in equity naming Mr. Velan, Mr. Starr, ACS, and another company, Albin Development Company Inc., in which Mr. Chappel, Mr. Velan, and Mr. Starr each own one-third of the stock. The allegations in this complaint are very similar to the allegations in the complaint at GD97-4796. In this complaint, Mr. Chappel requests that defendants be required to purchase Mr. Chappel's shares in ACS and Albin at a fair market price, that the court order the wind-up and dissolution of ACS and Albin, that the court appoint a custodian for ACS and Albin, that Mr. Velan and Mr. Starr be

required to account for amounts received as a result of their wrongful and/or negligent acts, that ACS and Albin be ordered to pay Mr. Chappel dividends for his one-third interest in ACS and Albin, and that ACS be required to hold annual meetings of shareholders.

In their answers to Mr. Chappel's counterclaim filed at GD97-733 and his complaints filed at GD97-4796 and GD97-4798, defendants deny the allegations upon which Mr. Chappel bases his various causes of action. Defendants incorporate the allegations in their complaint filed at GD97-733 that Mr. Chappel's relationship with ACS was terminated because he had become a competitor.

The pleadings in this declaratory judgment action, including the incorporated pleadings of the previous three lawsuits, create a factual dispute as to Ms. Chappel's motives and as to whether she and her husband are competing with ACS. Ms. Chappel contends that she needs to examine ACS's records in order to protect the interests of the minority shareholder. She has a fiduciary obligation to protect his interests, and she has reason to believe that the management of ACS is operating the business for its own interests and in an incompetent fashion. She further alleges that she is not a competitor; consequently, any information that she receives will not be used to the detriment of the corporation.

ACS, on the other hand, contends that plaintiff is a competitor and that the information which it is unwilling to provide will assist plaintiff and her husband in competing against ACS. They also contend that plaintiff seeks to obtain information regarding the management and operations of ACS for purposes of disrupting

its business operations and in order to force the corporation into purchasing Mr. Chappel's stock.[1]

In her memorandum of law in support of plaintiff's motion for judgment on the pleadings, Ms. Chappel contends that there is no need for a court to consider ACS's allegations. It does not matter whether her request to review corporate books and records is made in good faith. As a director, she has an absolute right to review corporate records. ACS, on the other hand, contends that a director's right to examine corporate records arises from her fiduciary duty to protect the corporation and that the right to inspect will cease where the director is no longer acting in accordance with those fiduciary duties.

A shareholder's right of inspection is governed by 15 Pa.C.S. §1508 which (1) permits a shareholder to inspect the share register or list of shareholders unless the corporation can establish that the inspection which the shareholder seeks is for an improper purpose and (2) which does not permit a shareholder to inspect other books and records unless the shareholder establishes that the inspection is for a proper purpose. The business corporation law has no provisions governing a director's right of inspection. This is governed by case law.

Case law recognizes that a shareholder's access to corporate records is narrower than a director's access. The corporation is managed under the direction of the board of directors. A director of a corporation has a

---

1. I have ruled in the prior litigation that the shareholder agreement does not contain provisions requiring the corporation to purchase the stock of any shareholder. The agreement requires only that the corporation be given the option to purchase the stock of a shareholder who wishes to sell his stock at its fair market value as determined by a disinterested appraiser. The corporation has not expressed any interest in exercising this option to purchase.

legal obligation to the corporation to perform her duties as a director in good faith and in a manner that she reasonably believes to be in the best interests of the corporation. The director must use such care, including reasonable inquiry, skill, and diligence, as a person of ordinary prudence would use under similar circumstances. 15 Pa.C.S. §1712(a). Obviously, a director cannot perform these oversight and management responsibilities without access to corporate books and records that should be reviewed in order to make reasonable inquiry concerning the operation of the corporation. Consequently, legislation and case law governing the right of a shareholder to examine records is not useful in determining the "wide range of corporate documents" that a director might require in order to perform his or her fiduciary duties. *Lewis v. Pennsylvania Bar Association,* 549 Pa. 471, 476, 701 A.2d 551, 553 (1997).

The Pennsylvania case law that addresses a director's right to inspect corporate records does not provide clear direction. In 1912 in the case of *Machen v. Machen & Mayer Electrical Manufacturing Co.,* 237 Pa. 212, 85 A. 100 (1912), the Pennsylvania Supreme Court considered a director's request to inspect corporate books and documents of a New Jersey corporation. The corporation's chief place of business was within Pennsylvania, and its books and documents were maintained in Pennsylvania.[2]

The other directors and officers of the corporation of which the plaintiff was a director refused to allow

---

2. The court stated that there was no statute or law of New Jersey regulating the inspection of corporate records by directors. While technically the court would have been deciding the right to inspect under New Jersey law, the court's opinion did not focus on either Pennsylvania or New Jersey case law. Instead, the opinion involves a generic discussion of a director's right to inspect corporate records.

the plaintiff to inspect the books, documents, and papers of the corporation. As a justification, they alleged that the plaintiff had previously neglected his duties as president and secretary of the company, had interfered with the general management of its affairs, had canceled instructions given by the general manager, was promoting a competing concern, and had not made any charges or allegations of wrongdoing or irregularities concerning the manner in which the corporation was being operated.

The court's opinion stated that in fulfilling their duties to manage the affairs of the corporation, corporate directors must secure all information affecting the corporation obtainable from every available source. Important and essential information must come from the books and documents of the corporation itself. Consequently, a director has an unqualified right to inspect corporate books, records, and documents.

In support of this position, the court stated that differences of opinion will arise among directors as to the management of the affairs of the corporation. While the majority will control, it cannot be permitted to deprive the minority of its right to obtain information as to the affairs of the corporation by refusing an inspection of corporate books and records. To deny the director "this right is, in effect, to exclude him from the directorate of the corporation, as well as to announce the principle that a majority of the directors may, at their pleasure, exclude the minority from all participation in the management of the corporation." *Id.* at 221m 85 A. at 103.[3]

---

3. The court's discussion concerning the right of the director to inspect corporate books and records is dicta because in its opinion, the court stated that "appellees confine their argument to the second

In 1939, the Pennsylvania Supreme Court considered the same issue in *Strassburger v. Philadelphia Record Co.,* 335 Pa. 485, 6 A.2d 922 (1939). The court's opinion stated that a director, as a fiduciary, is entitled to all the information available to enable him to perform his duties to the stockholders who are the real owners of the corporation. A director is entitled at any time to make such inspection of corporate records as the director considers necessary to inform himself of the proper performance of the duties owed to the shareholders. However, the opinion also stated:

"In making his examination the director is entitled to expert assistance. He must of course act in good faith and therefore may not exercise his right of examination for purposes that would be in conflict with the performance of his fiduciary relationship." *Id.* at 490, 6 A.2d at 924. (footnote omitted)[4]

In *Simms v. Exeter Architectural Products Inc.,* 868 F. Supp. 668 (M.D. Pa. 1994), the court considered the request of a former president and a present director to review corporate records where evidence had not been offered to indicate any wrongdoing or breach of duty on his part. This opinion stated that the plaintiff's interest in the documents need not be scrutinized, "for a director enjoys an unqualified right to inspect the books of a corporation." *Id.* at 675. The opinion then stated:

---

proposition, and thereby concede that, if the court had jurisdiction, the undisputed facts were sufficient to justify it in awarding a peremptory mandamus." *Id.* at 217, 85A. at 102.

4. The court's discussion of the director's right to examine corporate records appears to be dicta because the court stated that plaintiff had not been re-elected to the board and that the fact that he is not now a director "makes it unnecessary to discuss the scope of a director's right of examination." *Id.*

"In the absence of any articulated allegations as to plaintiff's fiduciary duty and some evidence that would tend to support such allegations, and in consideration of the relevant case law, we will overrule the defendants' belligerent withholding of information and grant plaintiff's motion to compel production of corporate books and records." *Id.*

Courts almost universally recognize that a director has something close to an absolute right to inspect those corporate books and records that a reasonably prudent director would seek to examine because otherwise the director cannot perform his or her statutory functions. The courts divide over whether this "absolute" right to inspect is enforced where the director may be abusing his or her position, and over the circumstances in which a director may be denied access to corporate records in jurisdictions that are willing to place limitations on this "absolute" right. See 5A Timothy P. Bjur & Dennis Jensen, Fletcher Cyclopedia of the Law of Private Corporations §2253 (1995 rev. vol.); 2 F. Hodge O'Neal & Robert B. Thompson, O'Neal's Oppression of Minority Shareholders §7:36 (2d ed. 1995).

In certain jurisdictions, case law states that a director has an absolute and unqualified right to inspect corporate records. See cases cited in the O'Neal and Fletcher treatises. However, opinions which state that a director has an absolute right to examine corporate records were not necessarily considering situations in which the corporation was claiming that confidential information would be disclosed to a competing business. See *e.g., Pilat v. Broach Systems Inc.,* 260 A.2d 13 (N.J. Super. Ct. Law Div. 1969); *Chavco Investment Company Inc. v. Pybus,* 613 S.W.2d 806 (Tex. Ct. App. 1981); compare *Morton v. Rogers,* 514 P.2d 752 (Ariz. Ct. App. 1973).

When confronted with claims that a director will be misusing information that he or she obtains to the detriment of the corporation, many jurisdictions are reluctant to adopt a rule that directs its trial courts to compel the corporation to make confidential information regarding its management and operations available to this director without considering the reasons offered by the corporation for withholding the information. The following cases illustrate the approaches taken by jurisdictions that place qualifications on the "absolute" right of a corporate director to inspect corporate records.

In *Havlicek v. Coast-to-Coast Analytical Services Inc.,* 46 Cal.Rptr.2d 696 (Cal. Ct. App. 1995), directors, who had unsuccessfully sought to enjoin a merger involving the corporation, sought to examine the corporate books and records. The directors relied on California legislation which provides that every director has an absolute right at any time to inspect and copy all books, records, and documents of every kind. The California appellate court rejected the directors' contention that this legislation gives a director an absolute right to inspect documents that cannot be defeated on the ground that the information will be used to harm the corporation. The court ruled that the word "absolute" cannot mean absolute. It gave as an example a disgruntled director who voices an intention to violate his or her fiduciary duties to the corporation and the shareholders by using inspection rights to learn trade secrets and to gain access to confidential customer lists in order to compete with the corporation. It stated that an absolute right to inspect records is a general rule that allows a corporate director to inspect records without giving any explanation for seeking the inspection. Consequently, a court must per-

mit the inspection unless the corporation demonstrates "by evidentiary showing, that a protective order is necessary to prevent a tort against the corporation." *Id.* at 702.

In *Missouri ex rel. Moore v. State Bank of Hallsville,* 561 S.W.2d 722 (Mo. Ct. App. 1978), the court ruled that a director was entitled to access to corporate books and records where the bank failed to introduce evidence that the director's desire to inspect the books and records was motivated by any improper reason or that the inspection would result in any unreasonable interference of the bank's business that would be harmful to the interests of the shareholders. In its opinion, the court stated:

"A director, therefore, at common law, has been held to have an absolute and unqualified to right to examine such records. Such rule has received wide acceptance in other jurisdictions. 19 C.J.S. Corporations §780; 18 Am.Jur., Corporations, section 183, pp. 712, 713; 5 Fletcher Cyc. Corp., section 2235, p. 872.

"Where, as here, this right of inspection is sought to be enforced by mandamus, a writ of discretion and not of right, the court may temper the absolute right by conditions to avoid unreasonable or oppressive interference or disruption of corporate business. The mere possibility of abuse or misuse of the right does not afford any ground for its denial or restriction, and the factors which motivate a director in the exercise of this right are not proper subjects of judicial inquiry, and a presumption exists that inspection of books and records by a director is made in good faith and with honesty of purpose. Where enforcement of inspection rights is sought through mandamus, those objecting

to such inspection bear the burden of overcoming such presumption." 561 S.W.2d at 725. (citations omitted)

In *Washington ex rel. Paschall v. Scott,* 247 P.2d 543 (Wash. 1952), the corporation and its wholly-owned subsidiary refused to permit a director to review books and records relating to marketing practices, sales, and customers on the ground that the director had been contacting distributors and customers of the corporations and furnishing information regarding the business to competitors. The court found the allegations to be accurate and that the director's activity had been "very detrimental to the best interests of the corporations." In response to the director's contention that she had an absolute right to examine the corporate books and records, the court ruled that a director may be denied the right to examine corporate records where it is shown that the director has used information against the corporation and that the inspection will be detrimental to the best interests of the corporation. The court stated that where it is shown that the director seeks this information to damage or destroy the corporation, the director's claim that she needs the information to fulfill her fiduciary duties to the corporation has no merit.

In *Melup v. Rubber Corporation of America,* 43 N.Y.S.2d 444 (N.Y. Sup. Ct., Special Term, N.Y. County 1943), the corporation had withheld certain records on the ground that the director would use this information to create friction among the corporate employees and that the director could fulfill his obligations without reviewing these records. The court ruled that the director should have access to some of these records but not names of customers, suppliers, or employees because he did not require this information to adequately discharge his functions as a director. Also see, *Griffin v. Varflex Corp.,* 434 N.Y.S.2d 488 (N.Y. App. Div.

1980); compare *Baker v. Henry Glass & Co.*, 531 N.Y.S.2d 746 (N.Y. Sup. Ct., N.Y. County, 1988), and cases cited therein.

In *Delaware ex rel. Farber v. Seiberling Rubber Co.*, 168 A.2d 310 (Del. Super. Ct. 1961), a director filed a mandamus action to compel access to corporate records. The corporation filed an answer averring that the director's motive for the inspection was improper. The issue which the court addressed was whether the answer set forth a sufficient defense. The court denied the director's motion to strike the answer, stating:

"The right of a director to examine corporate records springs from his duty to protect and preserve the corporation. He is a representative at all of the stockholders. Because of his fiduciary relationship to the corporation, he must maintain a high standard of loyalty to the corporation, but when he acts hostile to the corporate interests, when his motives are improper, then it must be said that he no longer is performing his corporate duties. Once he ceases to perform his corporate duties, his right to inspect the books of the corporation should immediately end. It seems entirely inconsistent to say that a director has an absolute right to inspect the records of a corporation so that he may better perform his obligations to protect the corporation, and in the next breath say this right is absolute and remains inviolate even though such examination is conducted for an improper purpose hostile to the interest of the corporation. . . .

"It is my conclusion that a director's right to inspect corporate books, including the stock ledger, may be termed an absolute right only so long as his purpose is not in derogation to the interest of the corporation. However, if it can be established that his motives are improper, or that they are in derogation to the interest

of the corporation, then his right to inspect ceases to exist." *Id.* at 312.

In *Henshaw v. American Cement Corp.,* 252 A.2d 125 (Del. Ch. 1969), the court considered a request of a director for authorization to review corporate records in order to determine whether a suit brought by the corporation had any merit. The court said that where a plaintiff establishes that he is a director and that a demand to review records has been made, the burden shifts to the corporation to show why the director should not be permitted to exercise his right to examine corporate records or why such exercise should be limited. Under this test, as applied by this court, the director will prevail if the director shows a purpose germane to his position as a director. The purpose is not improper because of the possibility that the director may abuse his position as a director and make information available to persons hostile to the corporation or otherwise not entitled to the information.

The difficulty with a rule that a director has an absolute right to review corporate records is that it allows a director who is either a direct competitor or who is assisting third parties with interests adverse to the corporation's interests to obtain confidential information that will be used against the corporation. Courts offer the following responses to this argument against an absolute rule: *Henshaw v. American Cement Corp., supra,* 252 A.2d at 129 (a corporation has its remedy in the courts if the director violates his fiduciary duties by making information available to persons hostile to the corporation or otherwise not entitled to it); *Baker v. Henry Glass & Co., supra,* 531 N.Y.S.2d at 749 (misuse of confidential information is actionable by the corporation); *Dusel v. Castellani,* 350 N.Y.S.2d 258, 259 (N.Y. App. Div. 1973) (if the director, attempts

to use the information to the detriment of the corporation, the corporation may sue the director for breach of his fiduciary responsibility as a director and compel the director to account for his misconduct).

I do not find these responses to be satisfactory because a civil action that cannot be brought until the corporation has been harmed does not provide a corporation with adequate protection. Courts may act on the threatened failure of a fiduciary to perform properly his or her fiduciary duties. *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 253, 602 A.2d 1277, 1283 (1992). Consider the case law which permits a former employer to obtain injunctive relief for violations of covenants not to compete and misuse of confidential information because of the inadequacy of an action at law. See *Christopher M's Hand Poured Fudge Inc. v. Hennon,* 699 A.2d 1272 (Pa. Super. 1997); *Masure v. Massa,* 692 A.2d 1119 (Pa. Super. 1997).

I also considered whether a corporation has an adequate remedy under the provisions of the law permitting removal of a director if that director attempts to misuse confidential information. Under 15 Pa.C.S. §1726(c) upon application of any shareholder or director, a court may remove from office any director in case of fraudulent or dishonest acts, for gross abuse of authority or discretion with reference to the corporation or for any other proper cause. Removal is not an adequate remedy because this remedy escalates the dispute from the right to inspect records to removal from office. Furthermore, where the issue is the right to inspect records, the court is not faced with an all or nothing resolution. A court can tailor an order so that a director with conflicting interests may obtain certain information and be denied access to other information.

Obviously, we do not want a rule of law that permits directors to obtain confidential information in order to assist competitors or other third parties. At the same time, we want a rule of law that gives directors who will use any confidential information that they obtain only in connection with matters involving the operations of the corporation immediate access to this information. If a director cannot promptly obtain information, he or she is not actually a director because, without information, he or she cannot perform oversight functions or otherwise participate in the management of the company.

In a closely held corporation, there is always the potential of a falling out. Frequently, shareholders seek protection through bylaws which guarantee that each shareholder can elect at least one person to the board of directors.[5] The shareholder envisions that this director's participation in the corporate affairs will prevent the majority shareholders from operating the company to the detriment of a minority shareholder. The protection is somewhat illusory if the law does not give a director something close to an absolute right to immediate access to the records.

The strongest justification for a rule that a director has an absolute right to immediate access to the corporate books and records is similar to the justification for the exclusionary rule for Fourth Amendment violations. If the court recognizes any exception, corporations will deny access by claiming that the director's request falls within an exception. If the director can lose the right to immediate access to corporate records through al-

---

5. Shareholders of Pennsylvania business corporations are entitled to cumulate their votes for the election of directors unless otherwise provided in the articles of incorporation. 15 Pa.C.S. §1758(c).

legations raised by directors on the other side of a corporate split, the exception can become the rule.

There is substantial merit to this argument. It does not work to simply say that a director's access is governed (1) by a rule that the director has the right to immediate access to corporate information and (2) by an exception to the rule where the corporation claims that the information will be used to the detriment of the corporation. If allegations that the information will be used to the detriment of the corporation can prevent a director's access to substantial information for substantial periods of time, the exception takes away the protections that the general rule was intended to furnish.

However, the solution is not an absolute rule under which a director who is operating a competing business across the street is entitled to confidential corporate information because this solution gives no weight to the interests of the corporation. Instead, the corporation should have a limited opportunity to present clear and convincing evidence showing that the information that it seeks to withhold would, if disclosed to the director, create a significant likelihood of substantial harm.

Because the denial of access to corporate records operates to deny a director the ability to participate in the management and operation of the corporation, any exception to the rule that a director has a right to examine corporate records must be narrow in scope and time. The burden must be on the corporation to present clear and convincing evidence that disclosure will create a substantial likelihood of significant harm; the corporation should be permitted to withhold only specific information for which it has made such a showing; and the corporation should be given only a short time in which to assemble its evidence.

Under this approach, a director need not show a proper motive. Allegations that the director is not concerned with the best interests of the corporation, that the director seeks this information to promote the director's own interests, or that the director has a hostile relationship with corporate management and/or with the other directors of the corporation are not sufficient.

I am not following the cases which state that a director loses his or her right to examine corporate books and records upon a showing of an improper motive. See *e.g., Delaware ex rel. Farber v. Seiberling Rubber Co., supra,* which states that if the corporation can show that the director has engaged in conduct or made statements showing that the director is hostile to the corporation, corporate records may be withheld because the director cannot be assumed to be seeking the review of the records pursuant to his or her duty to protect and preserve the corporation. Also, I am not following the cases which state that a director is entitled to review books and records once any proper purpose for the inspection is established and that it is irrelevant whether the director may make the information available to persons hostile to the corporation or otherwise not entitled to this information. See *e.g., Henshaw v. American Cement Corp., supra.* I do not find either approach to be satisfactory. Motives are elusive. Furthermore, if evidence does not show that a director with "bad" motives is likely to harm the corporation, the director's "bad" motives are not a sufficient reason to deny the director the opportunity to participate in the management of the corporation. On the other hand, if a director with a proper purpose for the information will be misusing this information, the corporation should be protected.

In the present case, ACS's allegations that plaintiff and her husband are competitors, if established, support

ACS's decision to deny plaintiff access to certain corporate books, records, and other information that a reasonably prudent director might wish to examine. Consequently, I am denying plaintiff's motion for judgment on the pleadings in which plaintiff seeks a court order barring the corporation from denying plaintiff access to any corporate records.

However, for the reasons that I discussed, allegations, rather than evidence, cannot serve as a basis for denying plaintiff's access to corporate information for a significant time. Consequently, the proceedings in this case shall be governed through the procedure described below.

Plaintiff's motion for judgment on the pleadings is converted into a motion for summary judgment. Within 10 days, ACS shall file a supplemental answer to plaintiff's motion in which it sets forth the categories of information which it is not permitting plaintiff to examine. It shall also identify the categories of information that plaintiff may examine at this time.

Within 40 days, ACS shall submit deposition testimony supporting its decision to deny plaintiff access to those categories of documents that it will not voluntarily make available to plaintiff. At the next argument, the sole issue will be whether ACS has presented clear and convincing evidence which supports a finding of a significant likelihood of substantial harm unless plaintiff is denied access to specified corporate records. In other words, I will not be deciding factual disputes but, rather, will be deciding whether there is clear and convincing evidence supporting ACS's position.

If ACS has not offered clear and convincing evidence supporting its position, I will enter a court order permitting inspection of those corporate documents that plaintiff seeks to inspect. On the other hand, if ACS

has offered clear and convincing evidence to support its position, plaintiff will not be entitled to the relief that she seeks unless she subsequently prevails at a final court hearing.

Under this procedure, a director will not be denied the opportunity to inspect corporate records on the basis of allegations in the pleadings until the court can hold a final hearing. A director's right to inspect corporate records will be enforced unless evidence provided by the corporation—rather than allegations within the pleadings—establishes a prima facie ground for denying a director access to corporate records.

For these reasons, I enter the following order of court:

## ORDER

On December 22, 1998, it is hereby ordered that:

(1) plaintiff's motion for judgment on the pleadings seeking a court order compelling ACS to furnish corporate records and other information that a reasonably prudent director might wish to examine is denied;

(2) plaintiff's motion for judgment on the pleadings is converted to a motion for summary judgment;

(3) ACS shall file an amended response, as described in the opinion accompanying this order of court, within 10 days of this date;

(4) within 40 days of this date, ACS shall file deposition testimony for the purpose of establishing facts essential to a showing that it is entitled to deny plaintiff access to those categories of information that it is withholding;

(5) argument on the issue of whether ACS has made a prima facie showing based on clear and convincing evidence shall be held on February 23, 1999 at 12

noon; defendants' brief shall be filed no later than seven days prior to the argument; plaintiff's brief shall be filed no later than three days prior to the argument; and

(6) in the event that ACS has made a prima facie showing that it is entitled to deny access, upon request of plaintiff, this court will schedule a final hearing on plaintiff's complaint.