467 A.2d 1133

ARC MANUFACTURING COMPANY, INC.

v.

Josef KONRAD, Defendant and Third Party
Plaintiff, Appellant,

v.

ARC MANUFACTURING COMPANY, INC. and Johan
Industries, Inc. and Hans Trustorff and Emil Feuchter,
Third Party Defendants, J. Howard Foote, Custodian.

ARC MANUFACTURING COMPANY, INC.

v.

Josef KONRAD

v.

ARC MANUFACTURING COMPANY, INC. and Johan
Industries, Inc. and Hans Trustorff and Emil
Feuchter, Appellants.

Superior Court of Pennsylvania.

Argued Dec. 6, 1982.

Filed Sept. 30, 1983.

Reargument Denied Dec. 9, 1983.

Petition for Allowance of Appeal Denied March 12, 1983.

74

---

John C. Fenningham, Warminster, for appellant (No. 381) and for appellee (No. 527).

Marc J. Sonnenfeld, Philadelphia, for appellants (No. 527) and for appellees (No. 381).

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

WICKERSHAM, Judge:

This case comes to us on cross-appeals from a final decree in equity issued by the Honorable George T. Kelton of the Bucks County Court of Common Pleas. This complex and lengthy litigation between business associates began on April 6, 1979, when ARC Manufacturing Company, Inc. (hereinafter ARC) filed a complaint in equity against Josef Konrad, (hereinafter Konrad) a shareholder, director and officer of ARC. ARC's complaint alleged that although Konrad had been removed from his post as president of ARC, Konrad refused to leave the corporation. ARC sought a permanent injunction barring Konrad from its premises or from interfering with the conduct of ARC's business.

Konrad filed a counterclaim against ARC and a third party complaint against the other two shareholders of ARC, Hans Trustorff and Emil Feuchter. On his part, Konrad sought an injunction to restrain ARC from interfering with Konrad's exercise of his responsibilities as president of ARC; Konrad contended that his removal from that office was improper.

Preliminary hearings were held before Judge Kelton in April of 1979; after these hearings Judge Kelton denied ARC's request for a preliminary injunction. At Konrad's request Judge Kelton issued a special injunction preserving the status quo, freezing compensation for Trustorff and Feuchter and appointing Donald L. Toner, Esq., special receiver to insure compliance with the injunction. Further hearings were held.

Judge Kelton made detailed findings of fact, discussed the applicable law, made conclusions of law and issued a decree nisi on November 10, 1980. The most salient points of the decree nisi were the appointment of a custodian for ARC, the direction of a payment from ARC to Konrad and a payment from Trustorff and Feuchter to ARC for counsel fees paid by ARC.

Konrad, as well as ARC, Trustorff and Feuchter filed exceptions to the decree nisi. On January 5, 1982, the lower court en banc dismissed the exceptions, confirmed the decree nisi and entered a final decree. All parties appealed to this court. Subsequent to the filing of appeals Konrad sought a supersedeas and stay pending appeal; Konrad's application was denied by the lower court. A per curiam order of this court directed the lower court to hold a hearing and make factual findings with respect to Konrad's application. The lower court's findings were not disturbed by this court.

A paraphrase of the lower court's findings of fact may be made as follows. ARC was formed in 1968 by Trustorff, Feuchter and Konrad. Trustorff and Konrad were the most active incorporators but Feuchter was included in the pre-incorporation discussions. All of the businessmen agreed that the enterprise would be constituted as a Pennsylvania business corporation, with each of them to have a one-third share of the business. The corporate officers were Konrad as President and Trustorff as Secretary-Treasurer; Konrad was to be employed as Sales Manager and Trustorff as Production Manager. There was a formal pre-incorporation agreement as well as corporate bylaws.

During the early years of the corporation's life, Konrad was President-Sales Manager and Trustorff was Secretary-Treasurer-Production Manager. Between 1968 and 1979 Trustorff and Konrad received equal compensation and ARC prospered. During this period of time Feuchter, however, became dissatisfied because as outside shareholder he was not receiving as much benefit from his stock ownership as Konrad and Trustorff.

In February of 1979, Konrad, ARC's president, summarily fired an important employee who had a good relationship with ARC's most important customer. When Trustorff and Feuchter learned of Konrad's action they called a directors' meeting without notice to Konrad, fired Konrad and rehired the employee. After some negotiations between the three directors, Feuchter offered to buy Konrad's share of the

business but Konrad refused the offer. Feuchter and Trustorff then called another directors' meeting to ratify their action in firing Konrad.

Konrad was present at this second board meeting yet Trustorff and Feuchter confirmed removing him as president, terminated his salary and eventually removed him as a director of both corporations. Another meeting was held in November 1979, ratifying the removal of Konrad from the presidency, amending corporate bylaws and increasing the compensation of Trustorff and Feuchter. The corporation also incurred large legal bills.

Both sides in this dispute submitted various proposals to the lower court. The judge below decided that a custodian would protect the interests of all the parties and allow an otherwise thriving business to continue.

Konrad phrases the issues involved in his appeal as follows:

> Was there a binding agreement (i.e. "Arrangement") between the three shareholders that Konrad would be active in the management of ARC as President and a member of the Board of Directors and would receive compensation equal to Trustorff, as long as Konrad was able to perform the duties of his office?

Brief for Konrad at 2.

Konrad argues that at issue is the Chancellor's failure to infer or conclude from the overwhelming weight of the evidence that there was a binding and enforceable Arrangement between Konrad, Trustorff and Feuchter. According to Konrad, all three businessmen promised each other that Konrad and Trustorff would be officers and employees of ARC for the rest of their working lives and that Konrad and Trustorff would receive equal compensation. In Konrad's view of the case, the written pre-incorporation agreement omitted certain fundamental promises between Konrad, Trustorff and Feuchter and, therefore, both the oral Arrangement and the written pre-incorporation agreement should have been enforced by the lower court.

■  The Chancellor and the lower court en banc rejected Konrad's position.  The Chancellor found that the pre-incorporation plans of the parties were not as broad as Konrad asserts.  When we are called upon to review a chancellor's findings we utilize the standard of review set forth by Judge Spaeth in *Wright v. Buckeye Coal Company*, 290 Pa.Super. 231, 236, 434 A.2d 728, 731 (1981), "[w]hen approved by a court *en banc* ... the findings of a chancellor have the effect of a jury verdict, and therefore, if supported by adequate evidence, will not be disturbed on appeal."  An appellate court is nevertheless able to review a chancellor's conclusions of law or ultimate fact.  *Id.*, 290 Pa.Superior Ct. at 236, 434 A.2d at 731.

■  Here, we are satisfied that the Chancellor's rejection of Konrad's contentions about the breadth of the oral Arrangement is supported by adequate evidence.  The written agreement between Konrad, Trustorff and Feuchter and the by-laws of ARC do not make any of the three incorporators, officers or employees of the corporation for life.  The by-laws actually provide that each officer shall hold his office until the next annual meeting or until his death, removal or resignation.  We agree with the Chancellor's finding that the alleged Arrangement was not as sweeping as Konrad argued.

Konrad's second issue is:

> Whether judicial relief granted a minority shareholder from oppression by the majority shareholders/directors may be based upon the shareholders' legitimate expectations in forming a closely-held corporation, and/or upon contract rights inter se, as well as the fiduciary relationship arising out of the majority shareholders/directors' control?

Brief for Konrad at 2.

Again, Konrad argues that the Chancellor erred in failing to conclude from the evidence that relief should have been afforded Konrad on several other bases, including the Arrangement, and Konrad's expectations.  Konrad asserts that violation of the expectations of minority shareholders

constitutes oppressive conduct and that oppressive conduct can be remedied by implementing the expectations of the minority shareholders. In this case, the relief sought is reinstatement pursuant to the Arrangement/Agreement.

■ For reasons explained in more detail above we believe that the Chancellor correctly decided that Konrad was not entitled to life long occupancy of the presidency of ARC. Therefore, the Chancellor did not err in refusing to return Konrad to his former position.

■ Konrad's third issue is:

Whether the Court below erred in refusing to grant a mandatory injunction restoring Konrad to parity with Trustorff as to compensation, participation in management and, tenure in office.

Brief for Konrad at 2.

Konrad believes that although the Chancellor appointed a custodian for ARC, Konrad should be reinstated as part of ARC's management. Because Konrad had no right to be president for life of ARC there was no error in refusing to bring Konrad back into ARC's day to day operation. In its findings on Konrad's application for a supersedeas order the lower court stated that the custodian's investigation revealed "that the animosity between Konrad and the two other principals was so severe that it would not be in the best interest of the health of the company that Konrad be presently active in the business on a day to day basis. We concur totally with ... said finding and adopt it as our own." Slip op. at 4. We agree with the Chancellor's determination.

Konrad's final issue is:

Whether the Court below erred in not providing adequate guidelines to the court-appointed custodian requiring Konrad to be maintained on a parity with Trustorff as to compensation, participation in management and, tenure in office.

Brief for Konrad at 2.

Konrad specifically complains that Trustorff and Feuchter received bonuses while his salary was reduced and that the

Custodian improperly allowed the payment by ARC of approximately $7,000 of legal fees.

■ The Chancellor explained the actions of the custodian in his findings on Konrad's supersedeas application. According to the Chancellor, Konrad's salary was reduced because of a downturn in ARC's business caused by generally poor economic conditions. The Chancellor also found that the legal fees paid by ARC amounting to $7,000 were reasonably related to ARC's business. We will not disturb these findings.

Having disposed of Konrad's issues, we will examine the questions raised by the cross-appeal of ARC. ARC's first issue is:

> Did the acts of the two majority shareholders of a solvent and profitable corporation in removing an unreasonable and obstreperous third shareholder as an officer and employee of the company, where there was no by-law or contractual restriction on their right to do so, constitute 'illegal and oppressive conduct' thereby warranting the appointment of a custodian pursuant to Section 513.1 of the Pennsylvania Business Corporation Law, P.L. 459, No. 216, § 30 (1968), Pa.Stat.Ann. tit. 15, § 1513.1 (Purdon Supp.1981)?

Brief for ARC at 3.

ARC asserts that this is a case of first impression under section 513.1 of the Pennsylvania Business Corporation law, 15 P.S. § 1513.1, which allows a court of common pleas to appoint a custodian for a business if those in charge of the corporation are behaving in an oppressive manner. ARC argues that there was no attempt to squeeze Konrad out of the business and that it was error to appoint a custodian.

The Chancellor found that Trustorff and Feuchter violated their fiduciary duties as shareholders and directors in the following ways:

> (a) Calling a special directors' meeting of ARC on February 7, 1979 without notice to Konrad and in violation of

Section 2.04 of the corporate by-laws and attempting therein to remove Konrad as President;

(b) Changing the locks on the company premises in February 1979 and thereafter refusing to permit Konrad to have reasonable access to the premises leased by ARC corporation in Feasterville, Pa. while Konrad remained as legal President of ARC, legal and de facto President of Johan, director of both corporations and trustee of the real estate trust which owned the premises;

(c) Attempting to exclude Konrad entirely from access to the business records of the corporation and from participation in meaningful decisions involving the corporate affairs since February, 1979;

(d) Terminating Konrad's salary and other compensation and engaging in conduct which prevented Konrad from remaining eligible for ARC's profit sharing plan thereby reducing his compensation from the combined enterprises from $77,932.39 in 1976, $105,552.93 in 1977, and $112,118.72 in 1978, to $33,935.81 in 1979 and zero in 1980.

(e) Failing to make provision for reasonable dividends to the shareholders in proportion to their ownership interest in the two corporations;

(f) Attempting to increase their own salaries, bonuses and profit sharing after Konrad was ousted from office;

(g) Attempting to transfer the management functions of the board of directors to an executive committee in November 1979; and

(h) Wasting the assets of the corporation by the payment and accrual of obligations for legal expenses and related costs incurred for the purpose of depriving Konrad of his shareholder benefits, such expenses having been incurred without compliance with the indemnification provisions of Section 410D and E of the BCL (15 P.S. § 1410) as amended.

35 Bucks Co.L.Rep. 294, 300–01 (1981).

The Chancellor further found:

Throughout all of our hearings and observations of the respective parties, we have come to the conclusion that *all three* principals to this dispute are exceptionally competent businessmen who *but for* their inability to get along with each other would have been able to operate their businesses without any judicial interference whatsoever. It would therefore be totally inappropriate at this time to order the complete liquidation of the corporations pursuant to Section 1107 of the BCL (15 P.S. § 2107) or even to appoint a receiver or custodian to take *complete* charge of the operation.

*Id.* at 304.

■ Under these circumstances we believe the Chancellor properly appointed a custodian. The decision of the Chancellor reflects an effort to preserve a business which somehow prospered despite the conflicts among its owner/operators. There was no error.

■ ARC's other issue is:

Did the acts of the two majority shareholders of a solvent and profitable corporation in causing the corporation to pay their counsel fees in litigation with an unreasonable and obstreperous third shareholder constitute a waste of corporate assets thereby warranting the appointment of a custodian pursuant to Section 513.1 of the Pennsylvania Business Corporation Law?

Brief for ARC at 3.

The Chancellor found that Trustorff and Feuchter incurred approximately $134,000 in legal costs and fees but that only approximately $27,000 of this sum was expended on activities which the two might reasonably believe to be in ARC's best interests. The balance of the sum was used to defend Trustorff and Feuchter's misconduct toward Konrad. It was not error to require Trustorff and Feuchter, rather than ARC, to pay these legal fees.

Decree affirmed.