# Baron v. Pritzker

*Melvin Shralow,* for plaintiff.
*Douglas Ress,* for defendants.

SHEPPARD JR., *J.,* March 6, 2001—Plaintiff, Scott Baron, and defendant, Randy Pritzker, are 50-50 owners of a pair of closely-held corporations. Baron filed this action in equity alleging that Pritzker froze him out of the businesses, wasted corporate assets and refused to honor a shareholder's buyout agreement. Essentially, Baron seeks the appointment of a custodian for the businesses, an accounting, a buyout of his shares, compensatory and punitive damages and attorneys fees. At issue are the defendants' preliminary objections to the complaint. The court sustains the objections, in part.

## FACTS

For the purposes of these preliminary objections, the court accepts the facts alleged in the complaint as true. *Smith v. Wagner,* 403 Pa. Super. 316, 320, 588 A.2d 1308, 1310 (1991). Baron and Pritzker are 50-50 shareholders of two Philadelphia businesses—Omicron Consulting, formerly called PBR Consulting Group Inc.,[1]

---

1. PBR originally had three equal shareholders—Baron, Pritzker and Gary Rosner. Rosner surrendered his shares in PBR in 1992.

and Omicron Systems. Pritzker is president and chief executive officer of the companies. Until September 1999, Baron was treasurer and chief financial officer. Each company has only two directors, Pritzker and Baron. Pritzker has two votes on each board. Baron has one vote on each board.

The companies, which sell computer services, hardware and software, appear to be very successful. For the past four years, the combined revenue of the two companies per year has been in the tens of millions and the combined income per year about $2.3 million.

Baron, Pritzker and Consulting are subject to a stockholders agreement.[2] Among other things, the agreement has a disability buyout provision:

"If any stockholder becomes totally disabled within the meaning of the disability income policy of the corporation covering such stockholder, and if such stockholder remains totally disabled for three months, the corporation shall purchase and such stockholder shall sell within 30 days after such three-month period, all of the disabled stockholder['s] stock at a purchase price determined in accordance with the provisions of section 4 hereof . . . ." Agreement ¶3(c).

The agreement requires that Consulting's board of directors annually set the value of each share in a certificate of agreed value within the first 30 days of the fiscal year. Agreement ¶4(b). That value is the purchase price for stock for that fiscal year under the disability buyout provision. Agreement ¶¶3(c) and 4(c). The board also may have the shares formally appraised. Complaint ¶4(b).

2. The original parties to the agreement were Baron, Pritzker, Rosner and PBR.

The agreement requires that the parties "execute and deliver all documents and instruments which are reasonably necessary to carry out the terms and conditions of th[e] agreement." Agreement, ¶14.

In 1992, Pritzker urged Jacqueline Zeitz to loan $173,163.76 to three managers of AT&T. Both Zeitz and AT&T were Consulting clients. Pritzker committed Consulting to guarantee the payment of principal and interest on the loan. Zeitz made the loan, but the three AT&T managers defaulted. When Pritzker and Consulting did not honor their guaranty to Zeitz, Baron repaid Zeitz. To date, Baron has paid Zeitz $100,000 on Consulting's behalf.

Beginning in May 1996, Baron suffered a series of medical problems, including a heart attack, three grand mal seizures and a brain tumor. These medical problems hindered Baron's ability to work. Since the onset of these medical problems, Pritzker has done many things that Baron claims are illegal, including freezing Baron out of management, cutting Baron's compensation, refusing Baron access to company information, increasing Pritzker's compensation to unreasonably high levels, unreasonably increasing the authority and compensation of Valerie DeRusso, who is now chief operating officer of Consulting, spending corporate money for personal expenses, and mismanaging the company.

Beginning in August 1998, Baron repeatedly asked Pritzker to have the companies buy out Baron's share in accordance with the disability buyout provision of the agreement, but Pritzker has refused to buy him out. Baron has asked Pritzker to sign the employer's por-

tion of Baron's applications for disability benefits, but Pritzker has refused to sign the applications.[3]

Baron alleges that in December 1999, Pritzker forced him to retire and terminated his compensation and benefits.

Baron filed this complaint in equity on August 17, 2000. The seven-count complaint presents claims for (1) appointment of a custodian, (2) corporate waste and mismanagement, (3) breach of fiduciary duty, (4) breach of the duty of good faith and fair dealing, (5) breach of contract, (6) indemnification and (7) punitive damages.

## DISCUSSION

### I. *Baron Properly Filed This Action As an Equitable Action*

Baron filed his complaint in equity. As part of the requested relief, Baron seeks to enjoin Pritzker's excessive compensation and expenditures and to order a buyout of Baron's shares. Defendants argue that Baron has improperly filed this action in equity and that the court should certify the action to the law side. Pa.R.C.P. 1509(b) and (c); Pa.R.C.P. 2179. The court overrules this objection.

Baron bases his corporate waste and fiduciary duty claims on acts by Pritzker that Baron claims were illegal, including freezing Baron out of management, cut-

---

3. Counsel have advised that, during the course of this action, Pritzker submitted the required forms for Baron's disability insurance applications and the insurance company has approved the applications. The court expresses no opinion on how these events affect Baron's claims.

ting Baron's compensation, paying Pritzker and DeRusso excessive compensation, and using corporate funds to pay for Pritzker's and DeRusso's personal expenses. The heart of these claims is oppression by a controlling shareholder of a closely held corporation.[4] In addition to statutory relief, equitable relief is traditionally available for such claims. See *e.g., Orchard v. Covelli,* 590 F. Supp. 1548, 1560 (W.D. Pa. 1984), *aff'd,* 802 F.2d 448 (3d Cir. 1986) (applying Pennsylvania law and ordering equitable buyout of oppressed minority shareholder's shares as alternative to dissolution); *Brenner v. Berkowitz,* 634 A.2d 1019, 1031 (N.J. 1993) (holding "that in appropriate circumstances a court exercising its equitable powers, as an alternative to dissolution, could compel the purchase of a shareholder's stock by the corporation; under exceptional circumstances, the court's equitable power might encompass the power to compel an involuntary buyout by the other shareholders.").[5]

---

4. The Business Corporation Law defines a closely-held corporation as a corporation with 30 or fewer shareholders. 15 Pa.C.S. §1103.

5. See also, *North Dakota ex rel. Heitkamp v. Family Life Services,* 616 N.W.2d 826, 838 (N.D. 2000) (holding that equitable relief is available in addition to statutory relief in cases of majority shareholder oppression of minority); *Kirtz v. Grossman,* 463 S.W.2d 541, 545 (Mo.App. 1971) (per curiam) (holding that court may order equitable buyout of minority shareholder's shares in lieu of harsher statutory remedy of dissolution and receivership); *Baker v. Commercial Body Builders,* 507 P.2d 387, 395-96 (Or. 1973) (listing equitable remedies available for oppressive conduct, including equitable buyout, accounting and injunction against future oppressive acts); *Tifft v. Stevens,* 987 P.2d 1, 10 (Or. App. 1999) (affirming trial court's order that majority shareholder who oppressed minority shareholder buy minority shareholder's shares), *review denied,* 6 P.3d 1101 (Or. 2000); *Davis v. Sheerin,* 754 S.W.2d 375, 380 (Tex. App. 1988) (holding that court, under its

That Baron asserts a statutory claim along with his other claims does not affect this result. First, the Business Corporation Law specifically authorizes the court to grant equitable relief—even when granting statutory relief such as appointment of a custodian—as long as the BCL does not otherwise expressly limit equitable relief. 15 Pa.C.S. §104; 2 W. Edward Sell et al., *Pennsylvania Business Corps.* §104.1 (2d ed. 1994). There is no express provision limiting equitable relief for Baron's claims.[6] Second, the BCL specifically authorizes the remedies of appointment of custodian or receiver and dissolution. 15 Pa.C.S. §§1767, 1981, 1984. That the BCL would authorize the court to grant such drastic relief, but forbid the court from affording milder equitable remedies, would make no sense. See *Orchard*, 590 F. Supp. at 1560; *Brenner*, 634 A.2d at 1031. See also, 15 Pa.C.S. §1767(b), amended committee cmt. 1990 (stating that purpose of new closely held corporation provision of custodian statute is "to establish a statutory foundation for the development on a case-by-case basis of safeguards for incorporated partners in dealing with each other, rather than forcing courts to distort the general rules of corporate law in order to grant relief in closely held situations").[7]

---

general equity power, may order an equitable buyout of a minority shareholder's shares for oppressive acts by the majority in an appropriate case where less harsh remedies are inadequate to protect the rights of the parties).

6. The exclusive remedy provisions of 15 Pa.C.S. §§1311, 1810 and 1908 do not apply to Baron's claims. See *Orchard*, 590 F. Supp. at 1560.

7. Defendants cite *Slotsky v. Gellar*, 455 Pa. 148, 314 A.2d 495, 496 (1974), in which the Superior Court stated that "an action under the Pennsylvania Business Corporation Law is an action at law not one in equity." *Slotsky* is not persuasive here. First, Counts II and III are not

Pritzker argues that Baron's contract claims provide an adequate legal remedy for this oppression. Presumably, Pritzker argues that a buyout under the contract would foreclose the need for any prospective equitable

---

actions under the BCL. Second, the court decided *Slotsky* under a prior version of the BCL. The current version of the BCL preserves the court's power to fashion an equitable remedy where there is no statutory remedy:

"Except to the extent otherwise provided in this title in cases where a statutory remedy is provided by this title, the court shall have the powers of a court of equity or chancery insofar as those powers relate to the supervision and control of corporations and other associations." 15 Pa.C.S. §104 (as amended by Act of Dec. 21, 1988, P.L. 1444, no. 177, §103 (effective Oct. 1, 1989).

Previous versions of section 104 read simply: "Except where a statutory remedy is provided by this title, the court shall have the powers of a court of equity . . . ." Act of July 9, 1976, P.L. 586, no. 142, §3(b) and Act of Nov. 15, 1972, P.L. 1063, no. 271, §1. At least one court interpreted the old section 104 as meaning that the existence of an express statutory remedy foreclosed the exercise of equitable powers. See *In re Butler County Memorial Hospital,* 27 Pa. Commw. 561, 564, 368 A.2d 849, 851 (1976) (holding that predecessor of 15 Pa.C.S. §104 did not grant equitable powers to court when deciding issue under a specific BCL statutory remedy); 2 W. Edward Sell et al., *Pennsylvania Business Corps.* §104.1 and n.3 (2d ed. 1994). The 1988 amendment to section 104 demonstrates that courts may now grant equitable relief—even when granting statutory relief under the BCL—as long as the BCL does not specifically limit equitable relief:

"The introductory phrase 'to the extent otherwise provided in this title' was added [in 1988] to clarify what the effect of an express statutory remedy is on the equity powers of a court. *The existence of an express statutory remedy in general will not limit the equity powers of the court in applying the statutory remedy, unless the statutory remedy contains an express limitation.* Examples of such a limitation are the requirements in [15 Pa.C.S.] §§1767 (b) and 1981(a)(3) that the court enforce a mechanism provided by the shareholders for resolving deadlocks in lieu of appointing a custodian or receiver or granting other relief." Sell et al., *supra,* §104.1. (emphasis added) (footnote omitted) The amendment to section 104 since the *Slotsky* and *Butler County*

relief. The court disagrees. First, Baron's tort claims implicate separate and alternative equitable grounds for such a buyout. See *Orchard,* 590 F. Supp. at 1560; *Brenner,* 634 A.2d 1018, 1031 (N.J. 1993). Second, Baron has asserted no valid contract claim against Systems, and Baron's contract claims provide no remedy for Pritzker's oppression of Baron as a shareholder of Systems.

Baron properly filed this action as an equitable action. The court overrules this objection.

## II. *The Court Overrules the Preliminary Objection to Baron's Claim for Appointment of a Custodian*

Count I requests that the court appoint a custodian for Consulting and Systems. Defendants argue that Count I is legally insufficient. Pa.R.C.P. 1028(a)(4). The court overrules the objection. The court may appoint a custodian if, among other reasons, "in the case of a closely held corporation, the directors or those in control of the corporation have acted illegally, oppressively or fraudulently toward one or more holders or owners of 5 percent or more of the outstanding shares of any class

---

*Memorial Hospital* decisions demonstrates that equitable relief is now generally available under the BCL—including under the custodian provision—unless an express provision of the BCL prohibits equitable relief.

Defendants also cite Pa.R.C.P. 2178, which says that no action by a member of a corporation against a corporation "may be prosecuted in equity unless there is ground for equitable jurisdiction other than the fact that the action is between a corporation or similar entity and one or more members thereof." This rule stands only for the acknowledged proposition that a plaintiff in a shareholder suit, as in any other suit, must lack an adequate legal remedy before bringing his suit in equity.

of the corporation in their capacities as shareholders, directors, officers or employees . . . ." 15 Pa.C.S. §1767(a)(2).

Baron has alleged these elements. He alleges that Pritzker is the director in control of Consulting and Systems, that Baron holds 50 percent of the shares of both corporations, and that Pritzker has committed or caused the corporation to commit various illegal acts—for example, breach of fiduciary duties and breach of contract—toward Baron as a shareholder. 15 Pa.C.S. §1767(a). See *Leech v. Leech,* 762 A.2d 718, 720 (Pa. Super. 2000) (affirming trial court's appointment of custodian where 50 percent shareholder unjustly exercised his authority as director to diminish other 50 percent shareholder's authority and income); *ARC Manufacturing Co. v. Konrad,* 321 Pa. Super. 72, 82, 467 A.2d 1133, 1138 (1983) (affirming, under prior version of custodian statute, trial court's appointment of custodian where controlling shareholders and directors breached fiduciary duties).

The defendants argue that these allegations, alone, are not enough. Citing *Simms v. Exeter Architectural Prods. Inc.,* 868 F. Supp. 668, 672 (M.D. Pa. 1994), the defendants argue that a claim for appointment of custodian requires that the plaintiff allege additional elements: that the corporation is financially unsound and/or that one shareholder seeks to cash out the value of the corporation to the exclusion of the other. The court disagrees. Section 1767(a)(2) contains no such requirements. And in *ARC Manufacturing Company,* our Superior Court affirmed the appointment of custodian to resolve a shareholder dispute even though the business was prospering. *ARC Mfg. Co.,* 321 Pa. Super. at 82,

467 A.2d at 1138. In Simms—a federal district court case that is not binding on this court—the court did not hold otherwise. *Simms,* 868 F. Supp. at 673. Once a plaintiff satisfies the statutory element for appointment of a custodian, the court has the discretion to appoint a custodian. See *id.* (noting the "may" language of section 1767(a)). The court in *Simms* considered additional factors—whether the corporation was financially sound and whether the defendant shareholders were trying to liquidate the corporation to the plaintiff's detriment— only in determining whether the court should exercise its discretion. *Id.* The court did not impose these factors as additional elements of a legally sufficient claim under section 1767. *Id.*

Count I states a legally sufficient claim for appointment of a custodian. The court overrules the demurrer to Count I.

Defendants also argue that Count I lacks sufficient specificity. Pa.R.C.P. 1028(a)(3). Because Count I is sufficiently clear to allow the defendants to answer and frame a defense, the court overrules this objection. *Krasja v. Keypunch Inc.,* 424 Pa. Super. 230, 235, 622 A.2d 355, 357 (1993).

### III. *Because the Demand Requirement Does Not Apply to These Closely Held Corporations, the Court Overrules the Preliminary Objection to Baron's Corporate Waste Claim*

Count II alleges that Pritzker wasted the corporate assets of Consulting and Systems. A claim of corporate waste is ordinarily derivative, because the corporation is the directly injured party. The defendants demur to Count II because the complaint does not allege that

Baron made a demand on the board to file suit against Pritzker. *Cuker v. Mikalauskas,* 547 Pa. 600, 612, 692 A.2d 1042, 1049 (1997) (holding that plaintiff must make written demand on the board before filing derivative claims). The court overrules the demurrer. Because Consulting and Systems are closely held corporations, the court will treat all of Baron's claims—including the corporate waste claim—as direct claims for which Baron may recover individually. American Law Inst., *Principles of Corp. Governance* §7.01(d) (1994). Demand is not required.

In *Cuker,* the Pennsylvania Supreme Court adopted the universal demand requirement of the *Principles of Corporate Governance ("ALI Principles"). Cuker,* at 613, 692 A.2d at 1049. Before filing a derivative claim— such as a claim of corporate waste—the plaintiff must make a written demand on the board to institute action or take corrective measures. *Id.* at 613-14, 692 A.2d at 1050, citing *ALI Principles* §7.03(a). A court should excuse demand only if irreparable injury would otherwise result; and even then, the plaintiff must make demand promptly after filing suit.[8] *Id.,* citing *ALI Principles* §7.03(b). See also, *Drain v. Covenant Life Insurance Co.,* 551, 570, 712 A.2d 273, 278 (1998) (discussing *Cuker*).

Read alone, section 7.03 seems to make only one exception to the demand requirement, irreparable injury. Baron does not argue that requiring demand would

---

8. *Cuker* seems to have changed Pennsylvania law such that futility of demand no longer excuses the demand requirement. *Drain v. Covenant Life Insurance Co.,* 551 Pa. 570, 580-82, 712 A.2d 273, 278-79 (1998).

have irreparably injured the corporations. Instead, he argues that the demand requirement does not apply to him because Consulting and Systems are closely held corporations. The court agrees.

Section 7.01(d) sets forth the basis for a second exception to the demand requirement:

"(d) In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." *ALI Principles* §7.01(d).

The court in *Cuker* was not required to consider section 7.01 of the *ALI Principles*. The defendant PECO Energy was not a closely held corporation. *Cuker* at 613, 692 A.2d at 1049. However, the court noted in a footnote:

"Our adoption of [sections 7.02-7.10 and 7.13] is not a rejection of other sections not cited. . . . The entire [*ALI Principles*] is a comprehensive, cohesive work more than a decade in preparation. Additional sections of the publication, particularly procedural ones due to their interlocking character, may be adopted in the future. Issues in future cases or, perhaps, further proceedings in this case might implicate additional sections of the *ALI Principles*. Courts of the Commonwealth are free to consider other parts of the work and utilize them

if they are helpful and appear to be consistent with Pennsylvania law." *Cuker,* at 613 n.5, 692 A.2d at 1049 n.5.

Since section 7.01(d) of the *ALI Principles* is helpful and consistent with Pennsylvania law, the court will apply section 7.01(d) to the demand requirement for the two closely held corporations in this case. See *Levin v. Schiffman,* July term 2000, no. 4442, op. at 12-14 (C.P. Phila. Feb. 1, 2001) (Sheppard, J.) (applying section 7.01(d) to demand requirement for closely held corporation);[9] *Audio Visual Xperts Inc. v. Walker,* 2000 WL 222152 at *2-3 (Del.Ch. 2000) (predicting that Pennsylvania courts would apply section 7.01(d) to demand requirement for closely held Pennsylvania corporation). There is no danger of a multiplicity of suits because Pritzker and Baron are the only shareholders and the only directors of the two corporations. *ALI Principles* §7.01(d)(i). There is no reason to conclude that allowing a direct action would materially prejudice the interests of creditors. *ALI Principles* §7.01(d)(ii). And allowing a direct action will not interfere with a fair distribution of the recovery among all interested persons because Baron is the only person who would benefit from the recovery. *ALI Principles* §7.01(d)(iii). Therefore, the court will exercise its discretion to treat all of Baron's claims—including the corporate waste claim—as direct claims for which demand is not required.[10] The court overrules the defendants' demurrer to Count II.

---

9. Commerce program opinions are available on the court's website at http://courts.phila.gov/cptcvcomp.htm.

10. Defendants raise Baron's failure to make demand in preliminary objections II, III and XIII. The court overrules all of these objections.

Defendants also argue that Count II lacks specificity. Pa.R.C.P. 1028(a)(3). Because Count II is sufficient to allow the defendants to answer and frame a defense, the court overrules this objection. *Krasja,* 424 Pa. Super. at 235, 622 A.2d at 357.

## IV. *The Court Overrules the Preliminary Objection to Baron's Claim for Breach of Fiduciary Duties*

Count III alleges that Pritzker, in his capacity as controlling shareholder, owes fiduciary duties to Baron, his fellow shareholder, and that Pritzker breached those duties. Pritzker argues that he owes no fiduciary duties to Baron directly, that Baron must bring any fiduciary duty claim derivatively, and that a derivative claim must fail because Baron did not make demand on the boards of the companies. The court overrules Pritzker's demurrer.

A *majority* shareholder of a Pennsylvania corporation owes a fiduciary or quasi-fiduciary duty to a minority shareholder that prevents the majority shareholder from using his power in such a way as to exclude the minority shareholder from his proper share of the benefits of the corporation. *In re Jones & Laughlin Steel Corp.,* 488 Pa. 524, 530-31, 412 A.2d 1099, 1103 (1980); *Weisbecker v. Hosiery Patents Inc.,* 356 Pa. 244, 250, 51 A.2d 811, 814 (1947). But with 50 percent of the shares of the two corporations Pritzker is not a majority shareholder. The court is aware of no published decision by a Pennsylvania state court addressing whether a non-majority shareholder in control of the board of a closely held corporation owes a fiduciary duty to other shareholders. But see *Delaney v. Georgia-Pacific Corp.,* 564 P.2d 277, 281 (Or. 1977)

(holding that "equal owners of a close corporation" are each "entitled to the other's performance of fiduciary duties of loyalty, good faith, and full disclosure") and *Gilbert v. El Paso Co.,* 490 A.2d 1050, 1055 (Del.Ch. 1984) (holding that a non-majority shareholder who controls or dominates the corporation owes fiduciary duties to the corporation). See also, *ALI Principles* §1.10(a)(2) and (b) (definition of controlling shareholder).

But, the recognized bases for imposing fiduciary duties on majority shareholders lead this court to conclude that it should impose those duties on Pritzker. A majority shareholder has the power to dictate to minority shareholders the manner in which the corporations are to be run. *Orchard,* 590 F. Supp. at 1556-57. To prevent the majority shareholder from abusing that power, the law imposes fiduciary duties on him. *Id.* That same rationale applies to Pritzker. He has a two-thirds vote on the boards of both corporations. Since Pritzker is a 50 percent shareholder of the corporations, Baron cannot remove Pritzker from the boards. Therefore Pritzker can dictate to Baron the manner in which the corporations are to be run. Pritzker owes fiduciary duties to Baron that prevent Pritzker from using his power in such a way as to exclude Baron from a proper share of the benefits of the corporations. Count III of the complaint states a legally sufficient claim for breach of those duties, see *Orchard,* 590 F. Supp. at 1556-57, and Baron may bring a direct claim.[11]

---

11. Even were Pritzker to owe fiduciary duties only to the corporation, as Pritzker argues, Baron could bring fiduciary duty claims against Pritzker without making demand. *ALI Principles* §7.01(d); *Levin v. Schiffman,* July term 2000, no. 4442, op. at 12-14 (C.P. Phila. Feb. 1, 2001) (Sheppard, J.).

Again, Pritzker also argues that Count III lacks specificity. Pa.R.C.P. 1028(a)(3). Because Count III is sufficiently clear to allow Pritzker to answer and frame a defense, the court overrules the objection. *Krasja*, 424 Pa. Super. at 235, 622 A.2d at 357.

## V. *Because Systems Was Not a Party to the Agreement the Court Sustains, in Part, the Objections to Baron's Contract Claims*

Counts IV and V of the complaint are contract claims. Count V alleges that Pritzker, Consulting and Systems breached the agreement. Count IV, which is related to Count V, alleges that Pritzker breached his contractual duty of good faith and fair dealing. Defendants demur to these related counts on a number of grounds and argue that they are insufficiently specific. The court sustains the objection to Count V, in part, and overrules the objection to Count IV.

### A. Count V Is Sufficiently Specific

The court first deals with the specificity objections. Count V alleges that "[t]he actions of Pritzker, and therefore of Consulting and Systems, are in breach of Baron's rights pursuant to the stockholders agreement," and that "Baron has done all things required to be done by him pursuant to the terms of the stockholders agreement." Complaint ¶¶49, 50. As Pritzker notes, Count V does not directly tell us which rights defendants violated. Pritzker argues that this failure makes Count V insufficiently specific. See Pa.R.C.P. 1019(a) and 1028(a)(3). The court disagrees.

In his brief, Baron argues that the right that the defendants violated is Baron's right to have defendants buy his shares. As Baron explains in his brief, these rights arise from paragraph 3(c) of the agreement. The event that triggers the corporation's duty to buy out Baron is Baron's total disability within the meaning of the disability income policy for three months.

No averment in the complaint, however, directly mentions the disability buyout provision or alleges that Baron became totally disabled. Nonetheless, it is clear from the complaint that Count V alleges a breach of the disability buyout provision. Baron alleges in the complaint that he requested in writing that "his stock be bought pursuant to terms of the stockholders' agreement . . . ," and he cites to exhibit "A" of the complaint, his June 28, 1999 memo to Pritzker. Complaint ¶28. In the memo, Baron writes that he and Pritzker "have agreed that my physical and medical condition currently meet the definition of 'total disability' within the meaning of both our disability insurance policy and our stockholders agreement. Being totally disabled entitles me to have the company purchase my stock . . . ." Complaint, exhibit A. See Goodrich-Amram 2d, Standard Pennsylvania Practice §1019(h)(4) at 360 (stating that written exhibits attached to a pleading become part of the pleading).

Reading paragraph 28 and exhibit "A" together, it is clear that Baron alleges that Consulting and Systems breached the total disability buyout provision. This allegation is sufficient to allow the defendants to answer and frame a defense, and the court overrules the specificity objection to Count V. *Krasja,* 424 Pa. Super. at 235, 622 A.2d at 357.

## B. Count IV Is Sufficiently Specific

Count IV alleges only that Pritzker's actions violated "his obligations of good faith and fair dealing." As Pritzker states in his brief, "Counts IV and V plainly arise from the same set of facts," *i.e.,* defendants' failure to buy out Baron under the agreement. While the allegations of Count IV are barely sufficient, Pritzker has demonstrated an understanding of Count IV that enables him to answer Count IV and frame a defense. The court overrules the specificity objection to Count IV. *Krasja,* 424 Pa. Super. at 235, 622 A.2d at 357.

## C. The Claim Against Consulting for Breach of the Disability Buyout Provision Is Legally Sufficient

Defendants argue that any claim under the total disability buyout provision is legally insufficient because "Baron has no right to have his stock purchased unless and until the company's carrier determines that he is totally disabled." Defendants' brief at 15. The court disagrees for three reasons. First, the court cannot at this time adopt defendants' restrictive interpretation of paragraph 3(c). Paragraph 3(c) merely incorporates a term and its meaning from Baron's disability insurance policy. Either Baron was totally disabled within the meaning of that term, or he was not, and the complaint alleges sufficient facts, if true, for a fact-finder to find that he was. Complaint ¶21. Paragraph 3(c) does not expressly condition Baron's buyout rights on his getting a determination of total disability from the insurance carrier.

Second, even if the agreement does require Baron to apply for benefits as a condition precedent to his rights under paragraph 3(c), Baron sufficiently pleaded that

condition precedent by averring that he "has done all things required to be done by him pursuant to the terms of the stockholders agreement." Complaint ¶50; Pa.R.C.P. 1019(c) (allowing a general averment of occurrence of conditions precedent).

Third, the court infers from Baron's allegations that the reason that there was no determination from the carrier is that Pritzker refused to submit the employer's portion of the application for disability benefits. If the carrier's determination is necessary to trigger the disability buyout provision, defendants cannot refuse to submit the application that would lead to that determination, and then rely on the lack of a determination as a defense.

The court overrules this aspect of the demurrer to Count V.

### D. The Contract Claim Against Systems Is Legally Insufficient Because Systems Was Not a Party to the Agreement

Systems demurs to Count V to the extent that Count V alleges that Systems breached the agreement. The court sustains the demurrer to any claim in Count V against Systems. The parties to the agreement were Pritzker, Baron, Rosner and PBR, which was Consulting's predecessor. Systems was not a party, and has no contractual duties under the agreement. *Hospicomm. Inc. v. International Senior Development LLC,* Aug. 2000, no. 2195, op. at 6 (C.P. Phila. Jan. 9, 2001) (Herron, J.); *First Union Nat'l Bank v. Quality Carriers,* Apr. 2000, no. 2634, op. at 43 (C.P. Phila. Oct. 10, 2000) (Sheppard, J.). The court sustains this aspect of

the demurrer to Count V, and dismissed V as to Systems.

### E. The Contract and Contractual Good Faith Claims Against Pritzker Are Legally Sufficient

Pritzker demurs to Counts IV and V to the extent that these counts allege that Pritzker breached the agreement. Pritzker argues that the disability buyout provision requires Consulting, not Pritzker, to buy Baron's stock. Since the provision does not expressly impose any duties on Pritzker, Pritzker argues that Consulting's failure to buy Baron's shares cannot give rise to a claim against Pritzker. The court disagrees.

The complaint alleges that Pritzker failed to submit disability insurance applications. Pritzker argues that a determination of disability by the insurance company is necessary to trigger a buyout. A fact-finder could find that Pritzker's failure to submit disability insurance applications violated Pritzker's duty under the agreement to "execute and deliver all documents and instruments which are reasonably necessary to carry out the terms and conditions of th[e] agreement." Agreement, ¶14.

A duty to submit disability insurance applications and the duty to otherwise effect Consulting's purchase of the stock might also arise from the doctrine of necessary implication or from the duty of good faith and fair dealing. The doctrine of necessary implication states that:

"In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from

doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Daniel B. Van Campen Corp. v. Building and Construction Trades Council of Philadelphia,* 202 Pa. Super. 118, 122, 195 A.2d 134, 136-37 (1963), quoting 8 Pa. Legal Encyclopedia, Contracts §140, quoted in *Frickert v. Deiter Bros. Fuel Co.,* 464 Pa. 596, 603, 347 A.2d 701, 705 (1975) (Pomeroy, J., concurring) and *Somers v. Somers,* 418 Pa. Super. 131, 137-38, 613 A.2d 1211, 1214 (1992). The doctrine is limited, however, to situations where implication of the missing term is necessary "to prevent injustice and it is abundantly clear that the parties intended to be bound by such term." *Kaplan v. Cablevision of Pa. Inc.,* 448 Pa. Super. 306, 314, 671 A.2d 716, 720 (1996).

In Pennsylvania, the implied duty of good faith is closely related to the doctrine of necessary implication. *Somers,* 418 Pa. Super. at 137-38, 613 A.2d at 1214. Every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance and its enforcement. *Donahue v. Federal Express Corp.,* 753 A.2d 238, 242 (Pa. Super. 2000); *Kaplan,* at 318, 671 A.2d at 722.[12] Types of contractual bad faith

---

12. In holding that the duty of good faith could not defeat express contractual rights, our Superior Court has stated that "the duty of good faith has been recognized in limited situations." *Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co.,* 385 Pa. Super. 30, 35, 560 A.2d 151, 153 (1989). The Third Circuit Court of Appeals has interpreted this statement to mean that the implied duty of good faith does not apply to every contract. *Parkway Garage Inc. v. City of Philadelphia,* 5 F.3d 685, 701 (3d Cir. 1993) (reading *Creeger* for the proposition that "under Pennsylvania law, every contract does not imply a duty of good faith" and holding that there is no implied duty of good faith where a plaintiff has recourse to an independent cause of action to

include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Somers,* at 137, 613 A.2d at 1213, citing Restatement (Second) of Contracts §205(d). A party cannot be liable for a breach of the contractual duty of good faith, however, for doing something that the contract expressly permits. *Creeger Brick and Bldg. Supply Inc. v. Mid-State Bank and Trust Co.,* 385 Pa. Super. 30, 36-37, 560 A.2d 151, 154 (1989) (holding that "[t]he duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract.").

With the disability buyout provision, Pritzker, Baron and Consulting intended that Consulting buy out a shareholder who becomes disabled and cannot participate in the business, and they intended that the disabled shareholder sell his shares to Consulting. The parties could not have intended to give a shareholder in control of the corporation the authority to circumvent the buyout provision by blocking Consulting's purchase of the shares. The disability buyout provision can only be effective if it implicitly imposes on Pritzker—who is both a signatory to the agreement and the director, officer and shareholder in control of the corporation—the duty to perform all acts necessary for Consulting to fulfill its duties. Such necessary acts would include making a determination whether Baron was totally disabled for three

vindicate the same rights with respect to which the plaintiff invokes the duty of good faith).

months; or, if the insurance company was to make that determination, timely submitting any required applications for benefits to the insurance company. The duty to do these acts would arise by necessary implication or, alternatively, as part of Pritzker's duty to perform the contract in good faith. See *Somers,* at 138, 613 A.2d at 1214.[13] These duties do not impose on Pritzker any obligations that contradict the express provisions of the contract. See *Creeger Brick and Bldg. Supply Inc.* at 37, 560 A.2d at 154.

Baron has stated a legally sufficient claim for breach of contract and breach of the duty of good faith and fair dealing against Pritzker. The court overrules this aspect of the demurrers to Counts IV and V.

### F. The Court Overrules the Preliminary Objections to Baron's Prayer for Damages in Counts IV and V

Defendants object to Baron's prayer for damages in Counts IV and V.[14] As part of the relief demanded in

---

13. This situation is distinguishable from cases where courts have refused to impose personal liability on corporate agents or owners who signed contracts in their representative capacities. See *e.g., Lumax Industries Inc. v. Aultman,* 543 Pa. 38, 669 A.2d 893 (1995). Pritzker signed the shareholder agreement in both his representative capacity and his individual capacity. "A person contracting as an agent is personally liable, whether he is known to be an agent or not where he makes a contract in his own name or voluntarily incurs a personal responsibility[.]" *Pennsylvania Gas & Water Co. v. Nenna & Frain Inc.,* 320 Pa. Super. 291, 303, 467 A.2d 330, 336 (1983). See also, *Estate of Duran,* 692 A.2d 176, 179 (Pa. Super. 1997) (same).

14. Though the defendants phrase this aspect of the preliminary objection as a demurrer the appropriate means for challenging an erroneous prayer for damages is a preliminary objection in the nature of a motion to strike off impertinent matter. *Hudock v. Donegal Mutual Insurance Co.,* 438 Pa. 272, 277 and n.2, 264 A.2d 668, 671 and n.2

Counts IV and V, Baron seeks an appraisal of the value of Consulting and compensation to Baron for one-half of this value. Defendants argue that, even if Baron is entitled to a buyout under paragraph 3(c), he is not entitled to half the appraised value of the shares, but only to the most recent agreed value. The court cannot hold solely on the face of complaint that Baron is not entitled to the relief he seeks.

Paragraph 4—to which paragraph 3(c) refers—requires that, every January, the board of directors prepare a certificate of agreed value for the stock. That agreed value becomes the purchase price for the stock for that year. The complaint alleges that there were certificates of agreed value for the years before Baron became entitled to a buyout under paragraph 3(c). The complaint does not allege that there was a certificate of agreed value for the year Baron became entitled to a buyout. Drawing all reasonable inferences in Baron's favor, the court must infer that there was no certificate for that year. The agreement is silent as to how to value the stock in a year for which there is no agreed value, but the parties contemplated appraisal as an appropriate method. The agreement provides for appraisal by consent of the board.

The parties intent on how to value the stock is a factual issue that the court cannot resolve on preliminary

---

(1970); Pa.R.C.P 1028(a)(2). The court cannot dismiss a count on the issue of damages. *Hudock,* 438 Pa. at 277 and n.2, 264 A.2d at 671 and n.2. This pleading defect does not affect Baron's substantive rights, however, and the court will consider the merits of the objection as if the defendants properly classified their objection. Pa.R.C.P. 126.

objections. The court overrules this aspect of the pre-liminary objections.[15]

## VI. *The Court Overrules the Demurrer to Baron's Indemnification Claim*

Count VI requests that the defendants indemnify Baron for his payments to Zeitz. Defendants object to Count VI on the ground that the statute of frauds bars Baron's indemnity claim. The court overrules the objection.

Baron argues that the statute of frauds defense is an affirmative defense that the defendant normally must raise as new matter in the answer, rather than in preliminary objections. Pa.R.C.P. 1028(a)(4), note; Pa.R.C.P. 1030(a); *Bocchicchio v. General Public Utilities Corp.,* 456 Pa. Super. 23, 26, 689 A.2d 305, 307-308 (1996). Since Baron raised this alleged pleading defect in his brief, rather than by filing preliminary objections to the preliminary objections, however, he has waived the defect and the court may consider defendants' the statute of frauds defense. *DeMary v. Latrobe*

---

15. Defendants' brief contains an additional argument not raised in its preliminary objection to Count V. Defendants argue that Count V violates Pa.R.C.P. 1020(a) because Baron asserts contract claims against more than one defendant in a single count. See *General State Authority v. Lawrie and Green,* 24 Pa. Commw. 407, 410, 356 A.2d 851, 853-54 (1976). The court disagrees. The claim against Consulting in Count V arises out of the same contract as the claim against Pritzker in Count V. Therefore, Baron properly asserted those claims in a single count. Compare with *Lawrie and Green,* at 410, 356 A.2d at 853-54 (holding that, where plaintiff sues two defendants based on two separate and distinct contracts, plaintiff must assert the two claims in separate counts; but where plaintiff sues two defendants on a single contract or a theory of joint liability, plaintiff may assert the claims in a single count).

*Printing & Publishing Co.,* 762 A.2d 758, 768 (Pa. Super. 2000).[16]

Nonetheless, the court cannot sustain the preliminary objection because the leading object rule may apply. *Thomas A. Armbruster Inc. v. Barron,* 341 Pa. Super. 409, 412, 491 A.2d 882, 884 (1985). The suretyship statute of frauds provides that:

"No action shall be brought whereby to charge [the defendant] upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him authorized." 33 P.S. §3.

The purpose of the suretyship statute of frauds is both evidentiary and cautionary. *Armbruster* at 413, 491 A.2d at 884. First, when a person gratuitously promises to answer for the debts of another, he receives no benefit for the promise, and the only evidence of the promise may be the promise itself. *Id.* The requirement of a writing thus serves an evidentiary function. *Id.* Second, the requirement of a writing serves a cautionary function by impressing upon the surety the significance of his act. *Id.*

These considerations fall away when the surety's primary motivation is not gratuitous.

---

16. Moreover, several decisions have distinguished the suretyship statute of frauds of 33 P.S. §3 as a "nonwaivable" defense that a defendant may raise by preliminary objection. *Blumer v. Dorfman,* 447 Pa. 131, 136, 289 A.2d 463, 466-67 (1972); *Brown v. Hahn,* 419 Pa. 42, 47, 213 A.2d 342, 345 (1965); *Peters Township Sanitary Authority v. American Home and Land Development Co.,* 696 A.2d 899, 902 n. 7 (Pa. Commw. 1997).

"Where the surety-promisor's main purpose is his own primary or business advantage, the gratuitous or sentimental element often present in suretyship is eliminated, the likelihood of disproportion in the values exchanged between promisor and promisee is reduced, and the commercial context commonly provides evidentiary safeguards." Thus there is less need for cautionary or evidentiary formality than in other cases of suretyship. Restatement (Second) of Contracts §116 cmt. a, quoted in *Armbruster* at 412, 491 A.2d at 884. Therefore, courts have created the leading object exception to 33 P.S. §3. The statute of frauds does not apply where the surety's main purpose is his own pecuniary interest or business advantage. *Armbruster* at 412, 491 A.2d at 884. The question of the promisor's purpose is for the trier of fact. *Id.*

The complaint alleges facts that would bring the indemnification claim within the leading object exception and outside of the statute of frauds. On these facts, a trier of fact could find that the main purpose of the guaranty was to serve the pecuniary interest of preserving Consulting's clients. See *Armbruster* at 412, 491 A.2d at 884 (stating that "[t]he question of the promisor's purposes is best left to the trier of fact"). Construing these allegations in Baron's favor, the court cannot determine that the leading object rule does not apply. Thus, this court overrules the preliminary objection to Count VI.

Defendants also argue that Count VI is insufficiently specific. Pa.R.C.P. 1028(a)(3). Because Count VI is sufficient to allow the defendants to answer and frame a defense, the court overrules the objection. *Krasja,* 424 Pa. Super. at 235, 622 A.2d at 357.

### VII. *The Court Overrules the Objection to the Demand for Punitive Damages*

Count VII asks for punitive damages against Pritzker. Defendants argue that the claim is legally insufficient and insufficiently specific. The court disagrees. In his brief, Baron concedes that his punitive damages demand relates only to the tort claims of Counts II and III. Baron alleges that Pritzker wasted corporate assets, that Pritzker breached his fiduciary duties and that Pritzker acted outrageously, willfully, maliciously and intentionally. These are claims for which Baron may recover punitive damages. *Delahanty v. First Pennsylvania Bank,* 318 Pa. Super. 90, 130, 464 A.2d 1243, 1262-63 (1983) (stating that punitive damages are available in tort actions where defendant's conduct was willful, malicious, wanton, reckless or oppressive). Baron's demand for punitive damages under Counts II and III may stand.[17]

Defendants also argue that Count VII lacks specificity. Pa.R.C.P. 1028(a)(3). Because Count VII is sufficiently clear to allow the defendants to answer and frame a defense, the court overrules the objection. *Krasja,* 424 Pa. Super. at 235, 622 A.2d at 357.

### VIII. *The Demand for Attorney Fees Is Stricken*

Counts I through V of the complaint ask for attorneys fees. Defendants argue that attorneys fees are not

---

17. Baron should have included his demand for punitive damages in the wherefore clauses of Counts II and III, rather than as a separate count. *Holl & Assocs. v. 1515 Market St. Assocs.,* May 2000, no. 1964, op. at 5 (C.P. Phila. August 10, 2000) (Herron, J.). Since Baron's pleading error does not affect the substantive rights of the parties, the court exercises its discretion to disregard the error. Pa.R.C.P. 126.

recoverable for these claims. The court agrees. "[T]he parties to litigation are responsible for their own fees unless otherwise provided by statutory authority, agreement of the parties or some other recognized exception." *Equibank v. Miller,* 422 Pa. Super. 240, 619 A.2d 336, 338 (1993). Baron cites no statute, agreement or recognized exception authorizing an award of attorney's fees for his claims. He only urges this court to adopt *ALI Principles* §7.18(d), which allows for recovery of attorneys fees by a successful plaintiff in a derivative action. Because plaintiff's claims are direct or deemed direct, rather than derivative section 7.18 does not apply. The court sustains the objection and strikes the demand for attorneys fees from Counts I through V.

## IX. *The Court Overrules the Demurrer Based on Laches*

Defendants object to Baron's equitable claims on the ground of laches. The laches defense must fail. A party may assert laches by preliminary objection, answer or reply. Pa.R.C.P. 1030(a) and 1509(b). But a court may determine a laches preliminary objection only "if laches clearly appears in the complaint." *Holiday Lounge Inc. v. Shaler Enterprises Corp.,* 441 Pa. 201, 204, 272 A.2d 175, 177 (1971). See *Long v. Kistler,* 72 Pa. Commw. 547, 555, 457 A.2d 591, 594 (1983) (stating that court should sustain a laches preliminary objection "only where the issue is free from doubt.").

To prove laches, the defendants must show "(1) delay arising from the other party's failure to exercise due diligence and (2) prejudice arising from the delay." *Miller v. Bistransky,* 451 Pa. Super. 433, 437, 679 A.2d 1300, 1302 (1996). Since prejudice does not appear

clearly from the complaint, the court overrules defendants' preliminary objection based on laches.

## X. *The Court Strikes the Allegation of Fraud As Impertinent Matter*

Defendants object to various allegations in complaint as scandalous or impertinent matter. Pa.R.C.P. 1028(a)(2). The court grants the objection, in part. Count I of the complaint—the custodian claim—alleges that "[t]he actions of Pritzker are illegal, oppressive and *fraudulent* as to Baron . . . ." Complaint ¶40. (emphasis added) Defendants argue that the allegation of fraud is scandalous or impertinent matter. Pa.R.C.P. 1019(b), 1028(a)(2) and (3). The court agrees. None of the seven counts in the complaint is a claim for fraud. The court sustains this aspect of the objection and strikes the words "and fraudulent" from the complaint.[18]

To the extent that the defendants object to other allegations in the complaint as scandalous or impertinent matter, the court overrules this aspect of the objection.

## CONCLUSION

The court sustains the preliminary objections, in part. The court will enter a contemporaneous order consistent with this opinion: (1) dismissing Counts IV and V against Systems only, (2) striking the demand for attorney's fees from Counts I through V, and (3) striking the words "and fraudulent" from paragraph 40.

---

18. The defendants also argue that the allegation of fraud lacks sufficient specificity. Pa.R.C.P. 1028(a)(3). With the fraud allegation gone, this objection is moot.

## ORDER

And now, March 6, 2001, upon consideration of the defendants' preliminary objections and the plaintiff's opposition to them, the respective memoranda of law, all other matters of record and in accord with the contemporaneous opinion in support of this order, it is ordered that:

(1) The preliminary objection of defendant Omicron Systems to Count V is sustained and Count V is dismissed as to Omicron Systems, only.

(2) The preliminary objection to the demand for attorneys fees is sustained. The demand for attorneys fees is stricken from Counts I through V.

(3) The preliminary objection to the allegation of fraud is sustained. The words "and fraudulent" are stricken from paragraph 40 of the complaint.

(4) All other preliminary objections are overruled.

(5) Defendants shall file an answer to the complaint within 20 days from the date of entry of this order.